# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NARCISO A. FRANCO, | ) | |
| | ) | |
| Petitioner, | ) | CRIMINAL NO: 01-10333 |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | THE HONORABLE JUDGE |
| | ) | MORRIS E. LASKER |
| Respondent. | ) | |
| | ) | |

## MEMORANDUM ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 8 U.S.C. § 2255

Now comes, the Petitioner, Narciso Franco, appearing through himself Pro-Se, who respectfully moves this Honorable Court to vacate, set aside, or correct the sentence imposed in the above captioned case, pursuant to 28 U.S.C. § 2255 and for the reasons presented infra.

## PLEA FOR LIBERAL CONSIDERATIONS

Narciso Franco, Petitioner ("Petitioner") respectfully moves this Honorable Court to grant all liberal considerations with respect to this action, pursuant to Haines v. Kerner, 404 U.S. 519 (1972), as Petitioner is not an attorney, has not attended law school, and has had no professional training with respect to the filing of legal pleadings.

## ISSUES PRESENTED

1.    Franco's trial counsel was overall inaffective.

      I.  Franco's attorney was ineffective
        for failure to request an evidentiary
        hearing on the 'safety valve' issue.

      II. Franco's attorney was ineffective
        for failure to argue a downward departure
        for the Petitioner's 'extra ordinary
        family circumstances.'

2.    The Court failed to convene sua sponte on an evidentiary hearing on the
'safety valve' issue.

3.    The wide disparity in the sentencing between Franco and his co-defendant
raised a presumption of vindictiveness by the prosecutorial officials.

## MEMORANDUM OF POINTS AND AUTHORITIES
## BRIEF INTRODUCTION - PROCEDURAL HISTORY

On July 25, 2002, the Petitioner Narciso Franco ("Franco") pleaded guilty to a plea agreement to a Two Count Indictment.  Namely, Count 1, conspired to possess with the intent to distribute 500 grams of cocaine, in violation of 21 U.S.C. § 846.  And Count Two, to distribute cocaine in violation of 21 U.S.C. § 841(a).  (See attachment, indictment, Exhibit 1).

At the Rule 11 hearing on July 25, 2005, Franco stipulated with the government that the drugs amount was between 500 grams - 2000 grams of cocaine.  Also, he agreed that he was to be assessed a two point obstruction of justice upward for his failure to appear in court for his original scheduled Rule 11 hearing.  However, he reserved the right to request acceptance of responsibility. (See attachment, plea agreement, Exhibit 2).

On December 4, 2002, the District Court sentenced Franco to 78 months in prison on each Count to be served concurrently, and four years of supervised release.

## STATEMENT OF FACTS

As backround on the case, the following facts occured.  Which led up to the Two Counts indictment.

On July 12, 2001, Franco and a co-defendant, Martin Pena ("Pena") among others were arrested.  The arrest came as a result of the cooperation of a Omay Ford (who was a cooperating witness for the government).  Omay Ford ("Ford") told the government Franco and Pena were his primary source of supply of powdered cocaine.

Ford initiated a planned drugs transaction with Franco and Pena.  On the morning Franco and Pena were arrested, a series of calls were made among the defend- ants and Ford about the  intended drug purchase.  When Franco and Pena arrived to pick up the drugs, they were arrested.  Pena had four ounces of powder cocaine hidden in his front pocket and the rear passenger seat of the car in which they arrived contained nine ounces of powder cocaine hidden in a tee-shirt.

On January 11, 2002, Franco notified his attorney that he intended to offer a change of plea.

On February 28, 2002, a Rule 11 plea hearing was scheduled.  However, Franco who was on home confinement bond and an electric monitoring device failed to appear.

On May 17, 2002, Franco was arrested and detained.  Thereafter, Franco pro- ceeded with his intention to plead guilty to the charges.

On July 25, 2002, Franco entered into a plea agreement with the government. He pleaded guilty to the two counts indictment. Franco also agreed for the plead to be assessed a two points upward departure for obstruction of justice. However, Franco maintained his right to receive a 3 points downward departure for acceptance of responsibility. **The Plea Agreement did not mention a recommendation for a safety valve protection.**[1]

A Presentence Report ("PSR") was prepared by the Probation Office and submitted to the government. (See attachment, Exhibit 3). The PSR did not recommend a downward departure for acceptance of responsibility. However, the Probation Office found him eligible for the 'safety valve' protection by placing him in Catagory 1. Additionally, the Probation Office noted Franco was qualified for the Safety Valve under criteria 1-4, but left open whether Franco would qualify for the safety valve criterion 5.

On December 2, 2002, Franco submitted his proffer. On December 3, 2002, the government submitted its sentencing memorandum, without attaching the investigation form for Franco's proffer.

On December 11, 2002, Franco was sentenced by the Court to 78 months, at level 28, Catagory 1. The Court did not grant a downward departure of 3 levels for acceptance of responsibility nor did the Court apply a two (2) level downward departure for the Safety Valve. Finally, the Court did not convene on an evidentiary hearing on the 'safety valve' issue.

---

[1] Franco is a first time offender.

On the other hand, Franco's co-defendant Javier Santiago-Fiel ("Pena") was sentenced on July 25, 2002 to one year and one day in prison. (See, PSR, Exhibit 4). Additionally, Pena was given a 3 level downward departure for acceptance of responsibility and a 2 level downward departure for safety valve protection.

## ARGUMENTS

1              ## PETITIONER'S COUNSEL WAS OVERALL INEFFECTIVE

In Strickland v. Washington, 466 U.S. 668, the United States Supreme Court announced a two prong test which should be satisfied by defendants claiming ineffective counsel.  The defendant must show both:

> (1)  Counsel's representation fell below an objectve standard of reasonableness; and
>
> (2)  There exists a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different.

The Strickland prongs were established in the present case, when the Franco's counsel failed to make arguments to the Court about Franco's 'extra ordinary family circumstances, he failed to request an evidentiary hearing on the 'safety valve' issue among other evidence that Franco's attorney failed to present or made arguments to the Court.

A defendant's Sixth Amendment right to effective assistance of counsel extends to sentencing.  See, Mempa v. Rhey, 389 U.S. 128, 19 L.Ed.2d 336, 88 S.Ct. 254 (1962).  Franco's Sixth Amendment rights were violated when his counsel failed to make certain arguments to the Court about Franco's extra ordinary family circumstances at the sentencing.

As a result of the unprofessional errors made by the trial attorney, the Petitioner was duly prejudiced in his sentencing. Therefore, this Honorable Court should grant a correction or reduction in the Petitioner's sentence.

## I. Franco's attorney was ineffective for failure to request an evidentiary hearing on the 'safety valve' issue.

Congress enacted the safety valve provision, 18 U.S.C. § 3553(f), in order to mitigate the harsh effect of mandatory minimum sentences supporting roles in drug-trafficking schemes. See, United States v. Miranda-Santiago, 96 F.3d 517, 527 (1st Cir. 1996) at n. 22 (citing H.R. Rep. No. 103-460 2d Sess., at & (1994).

In the present case, Franco's trial attorney did not request an evidentiary hearing before sentencing. Further, the attorney made no effort to show that an evidentiary hearing would have been useful. Indeed, an evidentiary hearing would have been useful by the Court to sift through evidence and thereby timely determined whether Franco should have been given the cover of the 'safety valve'.

In U.S. v. Ortiz-Santiago, 211 F.3d 146, 150 (1st Cir. 2000), the court anounced that the safety valve applies if:

(1)  The defendant did not have more than 1 criminal history point;

(2)  The defendant did not use violence or credible threats of violence or possess a firearm or dangerous weapon...;

(3)  The offense did not result in death or serious bodily injury to any person;

-8-

(4)  The defendant was not an organizer, leader, manager or super-
     visor of others in the offense...; and

(5)  Not later than the time of the sentencing hearing, the defendant
     has truthfully provided to the Government all information and
     evidence the defendant has concerning the offense...

In the present case, the PSR reflected that Franco has met prongs, 1 thru
4, but the Probation Office left the fifth prong of the safety valve to be deter-
mined by the Court.  Franco divulged all information he knew concerning the drugs
offense; however, the attorney did not request an evidentiary hearing after the
government offered  a different view.  Indeed, Franco met all the criteria of
the safety valve; he has no prior criminal record; he did not carry a firearm;
threaten violence, engage in an activity that was shown to involve death or serious
bodily harm to others; and he has been forthcoming with the authorites.

Franco's attorney failed to request an evidentiary hearing when the govern-
ment stated he did not divulged all he knew about the offense.  As a result of
this unprofessional error by the attorney Franco suffered the consequence of a leng-
thened sentence.  The court in U.S. v. Dethlefs, 123 F.3d 39, 44-45 (1st Cir. 1997),
stated that all the criteria for the safety valve are objective.  See also 18
U.S.C. § 3553(f) and U.S.S.G. § 5C1.2.

Therefore, Franco's trial attorney should have requested an evidentiary
hearing to faciliate the Court to sift through the evidence.  As a result of this
unprofessional error on the part of Franco's attorney, this Honorable Court grant
a reduction or correction in the Petitioner's sentence.

II. **Franco's attorney was ineffective for his failure to argue a downward departure for the Petitioner's 'extra family circumstances'**

Although the sentencing guidelines (U.S.S.G.) states that a defendant's family ties and responsibilities are "not ordinarily relevant in determining whether a sentence should be outside the applicable range," (5H1.6) under guideline 5K2.0 "the sentencing court may impose a sentence outside the range established by the applicable guidelines, **if the court finds, "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission** in formulating the guidelines that should result in a sentence different from that described. Moreover, the federal sentencing guidelines now stands as advisory to the courts. See, U.S. v. Booker, ___ U.S. ___, (2005 WL 50108 (U.S.)).

Further, the courts throughout the federal circuits have departed for "extreme family circumstances." For example, in United States v. Johnson, 964 F.2d 124 (2nd Cir. 1992), the Court departed because the defendant was a single parent, with three infant children which solely depended on the defendant. In the present case, Franco is the exclusive provider for his infant son living in the Dominican Republic. Additionally, Franco is the sole provider for his elderly ill parents in the Dominican Republic. Moreover, Franco will be deported from the United States. Therefore, the interest of justice would not be served to further wreck havoc in an entire family's life by the continued lengthy sentence of the Petitioner.

The Petitioner urges this Honorable Court to consider these extra ordinary family circumstances, and correct/reduce the Petitioner's sentence so he could

sooner be sent back to his native country to take care of his family.  The
Petitioner's trial attorney failed to present evidence and/or make arguments to
the Court in reference to the Petitioner's extra ordinary family circumstances,
thereby, the Petitioner was duly prejudiced at his sentencing.


2        The Court failed to convene sua sponte on
         an evidentiary hearing on the 'safety valve' issue.


Pursuant to 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, the District Court was
obligated to afford Franco a 'safety valve' protection with a two point reduction,
and impose a sentence without regard to any statutory minimum, if the Court found
that Franco met the criteria of 18 U.S.C. § 3553(f) 1 - 5 and U.S.S.G. § 5C1.2.


In United States v. Reid, 139 F.3d 1367 (11th Cir. 1998), the court stated,
"the district court **must make sufficient findings in denying a safety valve**
**protection to permit meaningful review.** (Emphasis added).  In the present case,
the District Court did not make a sufficient finding.  In fact, the Court rather
performed a perfunctionary respond to the government request for clarification as
to the 'safety valve' issue. The following excerpt demonstrates what took place
at the sentencing hearing:


    MR. MATHEW:  Yes, Your Honor, I just wanted to clarify the precise convic-
                 tion that he's been sentenced on.  And then also I just wanted
                 to confirm that the sentence is based on...no reduction for
                 the safety valve.


    THE COURT:  That's correct...


-11-

MR. McCALL:  So essentially,...the Court is finding that he does not
            qualify for the safety valve?

THE COURT:  Yes.

MR. McCALL:  And I assume that's category five - I mean, criteria five
            in the proffer.

THE COURT:  Yes. Yes.

(Sentencing Hearing at 15 - 16; Exhibit 5).


The colloquy exchanged that took place as mentioned supra did not resolve
the gap that was left open by the PSR nor the Court's obligation to conduct suf-
ficient findings.  Instead, the Court made a bare statement without more.


Further, in United States v. Ortiz-Santiago, 211 F.3d 152, the Court stated,
"When a defendant asserts entitlement to safety valve protection, the Court then
must pass upon the matter, exercising its independent judgment and must sift
through the statutory criteria and, if it determines that if one criteria has not
been met, **must elucidate specific reasons why the provision does not apply.**" (Em-
phasis added).  In the present case, the Court did not sift through the evidence
to make an independent determination on its own, rather the Court made some bare
statements without a finding.


Furthermore, the Court in United States v. Bradstreet, 207 F.3d 76, 81 (1st

-12-

Cir. 2000) stated, "sentencing, after all, is a matter for the district court and not for the government." Therefore, the Honorable Court should pass upon the matter, exercising its independent judgment. See, also, Fed. R. Crim. P. 11(e)(1)(B).

In the present case, the Petitioner divulged all the information he knew about the offense to the government. However, the government at the sentencing said he did not divulged all the information he knew. On the other hand, neither did Franco's attorney request an evidentiary hearing nor the Court initiated a sufficient finding sua sponte, and as a result Franco was duly prejudiced. The Court in United States v. Matos, 328 F.3d 34 (1st Cir. 2003) stated, "the government is not free to play cat and mouse with defendants, leading safety valve debriefings down blind alleys and then blame the defendants for failing to disclose material facts. The sentencing Court has both the power and coign of vantage to permit it to deal effectively with such situations." Id. at 40.

In essence, in order for the Court to receive the deference to be afforded to its decision on the safety valve issue, the Court was obligated to make findings of fact and conclusions of law upon which review may be have been had.  In this case, no findings on safety valve criteria 5 (five) were made.  Additionally, no reference was made by the judge to the dispated safety valve factual issues in the present case.  See, United States v. Marquez, 280 F.3d 19, 26 (1st Cir. 2002).

In fact, the Court's only explanation with regard to its decision was that the Court felt it was obliged to impose the sentence rendered, although the Court regretted having to do it.  (See, S.H., Exhibit 6).  That was incorrect.  The Court misunderstood its discretionary power in regards to the safety valve.  This mistake by the Court unduly prejudiced Franco resulting into a longer sentence.

Therefore, this Honorable Court should grant a reduction or correction in Franco's sentence in light of the Court's failure to make a meaningful finding on the safety valve issue.

3    **The wide disparity in the sentencing between Franco and his co-defendant raised a presumption of vindictiveness by the prosecutional officials**

A prosecutor's duty in a criminal prosecution is to seek justice, not vengeance. See, Berger v. United states, 295 U.S. 78, 88 (1935). In Brecht v. Abraham, 113 S.Ct. 1710 (1993), the Court stated "A habeas corpus relief for trial errors involving prosecutional misconduct should be granted if the error had substantial and injurious effect on the defendant."

In the present case, on December 11, 2002, Franco was sentenced to 6 years and 6 months. While on the other hand, Pena, Franco's co-defendant (co-worker) in the drug transaction was sentenced on July 25, 2002 to one year and one day in prison. (See PSR at 3, Exhibit 4). Both defendants essentially played the same role in the drug activity. Both defendants were co-workers, co-conspirators and partners in the drug transaction. Additionally, both defendants were first time offenders. However, despite the relative comparable culpability played by the defendants, there was **an extra ordinary sentencing disparity** between them.

The prosecutor developed a vindictive sense of justice against Franco because on February 28, 2002, the Petitioner failed to appear for his Rule 11 Hearing. The Petitioner had jumped bail because of his fear of deportation and the fear of not seeing the birth of his child. Nevertheless, the Petitioner had expressed

-14-

remorse for his indiscretion and quickly informed the prosecutor of his intention to cooperate fully and to make a plea agreement with the government after he was apprehended by the authorities. Despite, these efforts made by Franco, the prosecutor had an axe to grind with him. The prosecutor began to act not in the interest of justice, but rather out of vengeance against Franco.

In United States v. Flanagan, 80 F.3d 143 (5th Cir. 1996), the Court held that a 500% disparity between co-conspirators are unacceptable given relative comparable culpability. In the present case, the disparity between Franco and his co-defendant was 650%. A line of cases out of the First Circuit have stated "it would be an affront to justice to create a disparity in sentence where disparity in conduct does not exist." See, also, United States v. Thurston, 358 F.3d 51 (1st Cir. 2004); citing United States v. Wogan, 938 F.2d 1446, 1448 (1st Cir. 1991). See, also, United States v. Romolo, 937 F.2d 20, 25 n.5 (1st Cir. 1991).

In the present case, the Petitioner was duly prejudiced by the **extra ordinary** sentence disparity between him and his co-defendant. The government did concurred that the two defendants (Franco and Pena) were pointing fingers at each other and thereby cancelled each other out in their respective proffers to the government. (See S.H. page 8, Exhibit 7 ). However, the prosecutor allowed his personal intentional bias or animosity against Franco to be a factor into his determination as to who to believe and who to punish with a longer sentence. As a result of the prosecutor's vindictiveness led to a **sweetheart** deal with Pena (Franco's co-defendant) and a **punitive** blow to Franco. This arrangement resulted into a sentence of one year and one day for Pena and 6 years and 6 months for Franco.

The prosecutor's misconduct in the present case resulted into a substantial and injurious effect on the Petitioner. This would be abhorrent to the interest of justice if the Court allows it to stand. See, United States v. Ortiz-Santiago, 211 F.3d 146 (1st Cir. 2000).


4                              **CONCLUSION**


For the foregoing reasons, the Petitioner respectfully prays this Honorable Court to exercise its discretion and correct or reduce the Petitioner's sentence under the discretionary sentencing guidelines. See, U.S. v. Booker, ___ U.S. ___, WL 50108 (U.S.); by thereby, taking into consideration the effect of the lengthy sentence will have on the Petitioner's family (especially his infant son in the Dominican Republic), who all exclusively depends upon the Petitioner. The ends of justice requires this Honorable Coourt to also consider a reduction in the Petitioner's sentence in light of his Sixth Amendment violations.


Narciso A. Franco
Reg. No. 23787-038
F.S.L. Elkton, Unit H/A
P.O. Box 10
Lisbon, Ohio 44432

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

NARCISO A. FRANCO,                    )
                                      )
      Petitioner,                    )    CRIMINAL NO: 01-10333
                                      )
   vs.                                )
                                      )
UNITED STATES OF AMERICA,             )    THE HONORABLE JUDGE
                                      )    MORRIS E. LASKER
      Respondent.                    )
_____)

## VERIFICATION

    Now comes, the Petitioner, Narciso A. Franco pursuant to the Federal Statute on Verification 28 U.S.C. § 1746 unsworn authorities states that the statements made in the Petitioner's motion § 2255 are true and correct.

Narciso A. Franco

# CERTIFICATE OF SERVICE

I certify that on April /8 , 2005, I mailed a complete copy of the Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 and all attachments to all parties addressed as shown below:

1. Clerk's Office
   United States District Court
   District of Massachusetts
   John Joseph Moakley Federal Courthouse
   1 Courthouse Way
   Boston, MA 02210


2. Brian J. Leske
   Assistant U.S. Attorney
   United States Attorney's Office
   John Joseph Moakley Federal Courthouse
   1 Courthouse Way, Suite 9200
   Boston, MA 02210

Narciso A. Franco

EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. _01- 10333-MEL_ |
| ) | |
| v. ) | **VIOLATIONS:** |
| ) | |
| JAVIER SANTIAGO-FIOL, ) | |
| a/k/a, Martin Pena, ) | 21 U.S.C.§ 846 - |
| ) | |
| and ) | Conspiracy to Possess with |
| ) | Intent to Distribute, and to |
| NARCISO FRANCO, ) | Distribute, Cocaine |
| ) | |
| Defendants. ) | 21 U.S.C. § 841(a)(1) |
| ) | Possession of Cocaine with |
| ) | Intent to Distribute |
| ) | |
| ) | 18 U.S.C. § 2 - |
| ) | Aiding and Abetting |

## INDICTMENT

**COUNT ONE:**     **Title 21, United States Code, Section 846 -
Conspiracy to Possess with Intent to Distribute,
and to Distribute, Cocaine**

The Grand Jury charges that:

Beginning on an unknown date but at least by in or about
March 2001, and continuing until on or about July 12, 2001, in
Boston, the District of Massachusetts,

**JAVIER SANTIAGO-FIOL,
a/k/a "Martin Pena," and
NARCISO FRANCO,**

defendants herein, knowingly and intentionally combined,
conspired and agreed with persons known and unknown to the Grand
Jury to possess with intent to distribute, and to distribute
cocaine, a Schedule II controlled substance, in violation of
Title 21, United States Code, Section 841(a)(1).

It is further alleged that the offense charged in this count involved 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Section 846.

COUNT TWO:    21 U.S.C. § 841(a)(1) - Possession of Cocaine with
Intent to Distribute; 18 United States Code,
Section 2 - Aiding and Abetting

The Grand Jury further charges that:

In or about July 12, 2000, in the District of Massachusetts,

JAVIER SANTIAGO-FIOL,
a/k/a "Martin Pena," and
NARCISO FRANCO,

defendants herein, did knowingly and intentionally possess with

intent to distribute, and did distribute cocaine, a Schedule II

controlled substance.

All in violation of Title 21, United States Code, Section

841(a)(1) and Title 18, United States Code, Section 2.

-3-

**A TRUE BILL**

*George Clettenburg*

Asst FOREPERSON OF THE GRAND JURY

DICKENS MATHIEU
Assistant U.S. Attorney

DISTRICT OF MASSACHUSETTS; September 19, 2001. *at 2:30 pm*

Returned into the District Court by the Grand Jurors and filed.

*Nina Piccininno*

DEPUTY CLERK

-4-

JS 45 (1/96) (Revised U.S.D.C. MA 8/27/96)

**Criminal Case Cover Sheet**      **U.S. District Court - District of Massachusetts**

Place of Offense      Category No.  <u>II</u>      Investigating Agency  <u>DEA</u>

City <u>Boston, MA</u>      Related Case Information:

County <u>Suffolk</u>      Superseding Indictment _____ Docket No. _____
Original Defendant_____ New Defendant __X__
Magistrate Judge Case Number <u>01-0492-RBC</u>
Search Warrant Case Number _____
R 20/ R 40 from District of _____

**Defendant Information:**
Defendant Name    <u>Narciso Franco</u>      Juvenile: _____ Yes __X__ No
Alias Name    _____
Address    <u>Unkown</u>
Birthdate <u>3/03/70</u>    SS # <u>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</u>  Sex <u>M</u>  Race <u>H</u>  Nationality <u>Dominican</u>

Defense Counsel if known:  <u>James McCall</u>
Address:     <u>4 Longfellow Place, Boston, MA 02114</u>

U.S. Attorney Information:  <u>Dickens Mathieu</u>    Phone No.  <u>748-3227</u>
Address:  <u>One Courthouse Way, Federal Courthouse, Suite 9200, Boston, MA 02210</u>

Bar No. _____    Interpreter:  ☐ No X Yes

List Language and/or dialect: <u>Spanish</u>    Matter to be SEALED:  **X** No  ☐ Yes

☐  Warrant Requested    ☐ Regular Process    ☐ In Custody

Arrest Date  <u>7/12/01</u>

☐  In Federal Custody as of _____ in _____

☐  In State Custody at _____

☐  Serving Sentence  ☐ Awaiting Trial  **X** On Pretrial Release

Offenses Charged:  ☐ Complaint  ☐ Information  X Indictment

Total # of Counts:  ☐ Petty_____  ☐ Misdemeanor_____  ☐ Felony  <u>2</u>

Date:  <u>September 19, 2001</u>  Signature of AUSA: _____

Continue on Page 2 for Entry of U.S.C. Citations

(Revised U.S.D.C. MA 8/27/96) Page 2 of 2

District Court Case Number (To be filled in by deputy clerk): _____

Name of Defendant  Narciso Franco _____

## U.S.C. CITATIONS

| | U.S.C. Citations | Description of Offense Charged | Count Numbers |
|---|---|---|---|
| Set 1 | 21 USC § 846 | Consp. to Poss. w/ Int. to Dist. Cocaine | 1 |
| Set 1 | 21 USC § 841(a)(1) | Posss. w/ Int. to Dist. Cocaine | 2 |

ADDITIONAL INFORMATION:

_____

_____

_____(crjs45rv.cov - 9/3/96)

JS 45 (1/9o) (Revised U.S.D.C. MA 8/27/96)

**Criminal Case Cover Sheet**                    **U.S. District Court - District of Massachusetts**

Place of Offense                    Category No.  **II**                    Investigating Agency  **DEA**

City **Boston, MA**                    Related Case Information:

County **Suffolk**                    Superseding Indictment _____ Docket No. _____
                                     Original Defendant _____ New Defendant  **X**
                                     Magistrate Judge Case Number **01-0492-RBC**
                                     Search Warrant Case Number _____
                                     R 20/ R 40 from District of _____

Defendant Information:
Defendant Name     **Javier Santiago-Fiol**                    Juvenile: _____ Yes _**X**_ No
Alias Name          **Martin Pena**

Address            **Unkown**
Birthdate **1/31/77**          SS # **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**     Sex  **M**      Race  **H**      Nationality **Dominican**

Defense Counsel if known: ___ **William Keefe**

Address: _____ **55 Amory Street, Boston, MA 02130** _____

U.S. Attorney Information: ___ **Dickens Mathieu** _____ Phone No. ___ **748-3227** ___

Address: ___ **One Courthouse Way, Federal Courthouse, Suite 9200, Boston, MA 02210** ___

Bar No. _____          Interpreter:    ☐ No  **X** Yes

List Language and/or dialect: **Spanish** _____ Matter to be SEALED:    **X** No  ☐ Yes

      ☐  **Warrant Requested**          ☐  **Regular Process**      **X**  **In Custody**

Arrest Date **7/12/01** _____

**X**      In Federal Custody as of **7/12/01** _____ in **Plymouth House of Corrections** _____

☐      In State Custody at _____

☐      **Serving Sentence**      ☐  **Awaiting Trial**      ☐      **On Pretrial Release**

Offenses Charged:          ☐  **Complaint**      ☐  **Information**      **X** **Indictment**

Total # of Counts:          ☐  Petty_____      ☐  Misdemeanor_____      ☐ Felony  **2**

Date: _ **September 19, 2001** _     Signature of AUSA: _____

**Continue on Page 2 for Entry of U.S.C. Citations**

(Revised U.S.D.C. MA 8/27/96) Page 2 of 2

District Court Case Number (To be filled in by deputy clerk): _____

Name of Defendant  Javier Santiago-Fiol, a/k/a Martin Pena _____

U.S.C. CITATIONS

| U.S.C. Citations | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1   21 USC § 846 | Consp. to Poss. w/ Int. to Dist. Cocaine | 1 |
| Set 1   21 USC § 841(a)(1) | Posss. w/ Int. to Dist. Cocaine | 2 |

ADDITIONAL INFORMATION:

_____

_____

_____ _____(crjs45rv.cov - 9/3/96)

Criminal Complaint

# UNITED STATES DISTRICT COURT

### _____DISTRICT OF MASSACHUSETTS_____

UNITED STATES OF AMERICA

v.

JAVIER SANTIAGOFIOL and
NARCISO A. FRANCO

(Name and Address of Defendants)

DOCKETED

## CRIMINAL COMPLAINT

MAGISTRATE JUDGE NO:

_2001 M 0492 RBC_

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.

On or about <u>December 20, 2000 through July 12, 2001,</u> in <u>Suffolk &</u>

<u>Plymouth</u> Counties, in the District of <u>Massachusetts</u> defendant(s) did, (Track Statutory Language of Offense)

unlawfully, knowingly, and intentionally conspire to distribute, and possess with intent to distribute, cocaine and cocaine base, schedule II controlled substances,

in violation of Title ____21____ United States Code, Section(s) __846__ .

I further state that I am a(n) <u>DEA Special Agent</u> and that this complaint is based on the following facts:
                                Official Title

See Affidavit of DEA Special Agent Joseph Tamuleviz attached hereto and made a part hereof.

Continued on the attached sheet and made a part hereof:    X Yes  ☐  No

Signature of Complainant
Joseph Tamuleviz, Special Agent
Drug Enforcement Administration

Sworn to before me and subscribed in my presence,

<u>July 13, 2001</u> _at 11:47 am_ at Boston, Massachusetts
Date

ROBERT B. COLLINGS
<u>UNITED STATES MAGISTRATE JUDGE</u>

Name and Title of Judicial Officer

Signature of Judicial Officer

HON. ROBERT B. COLLINGS
CHIEF U.S. MAGISTRATE JUDGE
United States District Court
United States Courthouse , Suite 6420
1 Courthouse Way
Boston, MA 02210

**EXHIBIT 2**





RECEIVED
U.S. PROBATION

2002 JUL 31 AM 8: 30

BOSTON NEW CTHSE.

**U.S. Department of Justice**

*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*
*Dickens Mathieu Direct Line: (617) 748-3227*

*United States Courthouse, Suite 9200*
*1 Courthouse Way*
*Boston, Massachusetts 02210*

July 25, 2002

James E. McCall, Esquire
4 Longfellow Place
Boston, MA 02114

Re:  <u>United States v. Santiagofiol, et al.</u>
Criminal No. 01-10333-MEL

Dear Counsel:

This letter sets forth the Agreement between the United States
Attorney for the District of Massachusetts ("the U.S. Attorney") and
your client, Narciso Franco ("Defendant"), in the above-captioned case.
The Agreement is as follows:

1.  <u>Change of Plea</u>

At the earliest practicable date, Defendant shall plead guilty to
Counts One and Two of the Indictment. Defendant expressly and
unequivocally admits that he in fact committed the crimes charged in
these Counts of the Indictment, and is in fact guilty of those
offenses.

2.  <u>Penalties</u>

Defendant faces the following penalties:

A minimum mandatory term of imprisonment of five years; a maximum term
of imprisonment of 40 years;  A fine of up to $2,000,000; at least
three years of supervised release; and a $100 mandatory special
assessment for each count of conviction.

Defendant may also be deportable and/or excludable by the United
States Immigration and Naturalization Service as a consequence of his
conviction of the offenses to which he is pleading guilty.

James E. McCall, Esquire
July 25, 2002
Page 2

3.   Sentencing Guidelines

The parties will take the following positions at sentencing
under the United States Sentencing Guidelines:

    (a)   Counts One and Two of the Indictment involved a
        total of 500-2000 grams or more of cocaine.

    (b)   Defendant should be assessed a two-point upward
        adjustment in his offense level pursuant to §3C1.1
        as a result of his intentional failure to appear
        in court for a scheduled Rule 11 hearing.

    (c)   Defendant will take the position that
        notwithstanding his failure to appear, the Court
        should nonetheless reduce by three levels
        Defendant's Adjusted Offense Level under U.S.S.G.
        § 3E1.1.  The U.S. Attorney will recommend that
        Defendant not receive a reduction in Offense Level
        for acceptance of responsibility.

4.   Sentence Recommendation

    (a)   The U.S. Attorney agrees to recommend a sentence
        within the applicable guideline range, as
        determined at sentencing, but not lower than any
        applicable minimum mandatory term of
        imprisonment.

    (b)   The U.S. Attorney and Defendant will not move for
        a departure unless they give written notice to the
        other party of the basis for such departure not
        less than fourteen days before sentencing.  Any
        basis for departure for which written notice is
        not received at least fourteen days before
        sentencing is hereby expressly waived and cannot
        be argued at the time of sentencing.

    (c)   In the event of an appeal from, or collateral
        challenge to, Defendant's sentence, the U.S.
        Attorney reserves his right to argue the
        correctness of Defendant's sentence and the manner
        in which the District Court determines it.

James E. McCall, Esquire
July 25, 2002
Page 3

### 5.     Payment of Mandatory Special Assessment

Defendant agrees to pay the mandatory special assessment to
the Clerk of the Court on or before the date of sentencing,
unless Defendant establishes to the satisfaction of the Court
that Defendant is financially unable to do so.

### 6.     Court Not Bound By Agreement

The sentencing recommendations made by the parties and their
respective calculations under the Sentencing Guidelines are not
binding upon the U.S. Probation Office or the sentencing judge.
Within the maximum sentence which Defendant faces under the
applicable law, the sentence to be imposed is within the sole
discretion of the sentencing judge.  Defendant's plea will be
tendered pursuant to Fed. R. Crim. P. 11(e)(1)(B).  Defendant may
not withdraw his plea of guilty regardless of what sentence is
imposed.  Nor may Defendant withdraw his plea because the U.S.
Probation Office or the sentencing judge declines to follow the
Sentencing Guidelines calculations or recommendations of the
parties.  In the event that the sentencing judge declines to
follow the Sentencing Guidelines calculations or recommendations
of the U.S. Attorney, the U.S. Attorney reserves the right to
defend the sentencing judge's calculations and sentence in any
subsequent appeal or collateral challenge.

### 7.     Rejection of Plea By Court

Should Defendant's guilty plea not be accepted by the Court
for whatever reason, or later be withdrawn on motion of
Defendant, this Agreement shall be null and void at the option of
the U.S. Attorney.

### 8.     Breach of Agreement

If the U.S. Attorney determines that Defendant has failed to
comply with any provision of this Agreement, has violated any
condition of his pretrial release, or has committed any crime
following his execution of this Agreement, the U.S. Attorney may,
at his sole option, be released from his commitments under this
Agreement in their entirety by notifying Defendant, through
counsel or otherwise, in writing.  The U.S. Attorney may also
pursue all remedies available to him under the law, irrespective
of whether he elects to be released from his commitments under
this Agreement.  Further, the U.S. Attorney may pursue any and
all charges which have been, or are to be, dismissed pursuant to

James E. McCall, Esquire
July 25, 2002
Page 4

this Agreement. Defendant recognizes that no such breach by his
of an obligation under this Agreement shall give rise to grounds
for withdrawal of his guilty plea. Defendant understands that,
should he breach any provision of this agreement, the U.S.
Attorney will have the right to use against Defendant before any
grand jury, at any trial or hearing, or for sentencing purposes,
any statements which may be made by her, and any information,
materials, documents or objects which may be provided by his to
the government subsequent to this Agreement, or pursuant to the
proffer agreement previously entered in this case, without any
limitation. In this regard, Defendant hereby waives any defense
to any charges which he might otherwise have under any statute of
limitations or the Speedy Trial Act.

9.    Who Is Bound By Agreement

    This Agreement is limited to the U.S. Attorney for the
District of Massachusetts, and cannot and does not bind the
Attorney General of the United States or any other federal, state
or local prosecutive authorities.

10.    Complete Agreement

    This letter contains the complete and only agreement between
the parties relating to the disposition of this case. No
promises, representations or agreements have been made other than
those set forth in this letter. This Agreement supersedes prior
understandings, if any, of the parties, whether written or oral.
This Agreement can be modified or supplemented only in a written
memorandum signed by the parties or on the record in court.

    If this letter accurately reflects the Agreement between the
U.S. Attorney and Defendant, please have Defendant sign the
Acknowledgment of Agreement below. Please also sign below as
Witness. Return the original of this letter to Assistant U.S.
Attorney Dickens Mathieu.

James E. McCall, Esquire
July 25, 2002
Page 5

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By :

JAMES B. FARMER
Assistant U.S. Attorney
Chief, Criminal Division

STEPHEN P. HEYMANN
Assistant U.S. Attorney
Deputy Chief,
Criminal Division

DICKENS MATHIEU
Assistant U.S. Attorney

James E. McCall, Esquire
July 25, 2002
Page 6

## ACKNOWLEDGMENT OF PLEA AGREEMENT

    I have had this letter read to me in my native language in
its entirety and discussed it with my attorney.  I hereby
acknowledge that it fully sets forth my agreement with the United
States Attorney's Office for the District of Massachusetts.  I
further state that no additional promises or representations have
been made to me by any official of the United States in
connection with this matter. I understand the crimes to which I
have agreed to plead guilty, the maximum penalty for those
offenses and Sentencing Guideline penalties potentially
applicable to them.  I am satisfied with the legal representation
provided to me by my attorney.  We have had sufficient time to
meet and discuss my case.  We have discussed the charges against
me, possible defenses I might have, the terms of this Plea
Agreement and whether I should go to trial.  I am entering into
this Agreement freely, voluntarily, and knowingly because I am
guilty of the offense to which I am pleading guilty and I believe
this Agreement is in my best interest.


                    _____
                    Narciso Franco
                    Defendant

                         Date:_____7/25/0r_____


    I certify that Narciso Franco has read this Agreement, or
had this Agreement read to him in his native language, and that
we have discussed its meaning.  I believe he understands the
Agreement and is entering into the Agreement freely, voluntarily
and knowingly.


                    _____
                    James E. McCall, Esq.
                    Attorney for Defendant

                         Date:_____7/25/0r_____

EXHIBIT 3

## Offense Level Computation

(20) The Guideline Sentencing Range has been calculated using the guidelines in effect at the time of sentencing, that is, the guidelines contained in the Guideline Manual issued on November 1, 2001. The guidelines that effect the offense level and/or the criminal history calculations have not changed since the instant offense was committed.

(21) Violations of 21 U.S.C. §846 and 21 U.S.C. §841(a)(1) are found at U.S.S.G. §2D1.1. Per U.S.S.G. §3D1.2, all counts are grouped together.

(22) **Base Offense Level**: The defendant is accountable for the thirteen (13) ounces of cocaine seized on July 12, 2001, as well as for the nine (9) ounces of cocaine that he and his coconspirator had sold to a confidential informant earlier that same day. 22 ounces of cocaine converts to 623.7 grams of cocaine. The defendant has also pled guilty to being accountable for between 500 grams and 2,000 grams of cocaine. The defendant is, therefore, accountable for at least 500, but less than 2 kilograms of cocaine. Pursuant to U.S.S.G. §2D1.1(c)(7), the base offense level is 26.

|  |  |
|---|---|
|  | 26 |
| (23) **Specific Offense Characteristics**: None | 0 |
| (24) **Adjustment for Role in the Offense**: None | 0 |
| (25) **Victim Related Adjustment**: None | 0 |

(26) **Adjustment for Obstruction of Justice**: As the defendant wilfully failed to appear, as ordered, for a judicial proceeding, pursuant to U.S.S.G. §3C1.1, App. Note (e), the offense level is increased by two (2) levels as the defendant wilfully obstructed justice.

|  |  |
|---|---|
|  | +2 |
| (27) **Adjusted Offense Level (subtotal)**: | 28 |
| (28) **Adjustment for Acceptance of Responsibility**: None. | 0 |
| (29) **Total Offense Level**: | 28 |

## U.S.S.G. §5C1.2 (Safety Valve)

(30) The Probation Office has determined that the defendant meets criteria 1-4 of U.S.S.G. §5C1.2 (Limitation on Applicability of Statutory Minimum Sentences). If a determination is made that criterion 5 is satisfied, then a two (2) level reduction is warranted, per U.S.S.G. §2D1.1(b)(6), resulting in a Total Adjusted Offense Level of 26. The Court would also have the authority to impose a sentence below that which is statutorily mandated.

PART B.   THE DEFENDANT'S CRIMINAL HISTORY

### Juvenile Adjudications

(31)  None.

### Criminal Convictions

(32)  None.

### Criminal History Computation

(33)  As the defendant has no convictions, there are zero criminal history points.

(34)  According to the sentencing table (U.S.S.G. Chapter 5, Part A), zero (0) to one (1) criminal history points establish a criminal history category of I.

|  |  |
|---|---|
| TOTAL POINTS | 0 |
| CATEGORY | I |

### Other Criminal Conduct

(35)  None known.

### Pending Charges

(36)  None known.

EXHIBIT 4

in Worcester, Massachusetts. On that date, **Narciso Franco** appeared in U.S. District Court, at Boston, before Magistrate Judge Collings. A detention hearing was held and the court ordered the defendant detained.

(M) On July 25, 2002, **Narciso Franco** appeared with counsel in U.S. District Court, at Boston, before the Honorable Morris E. Lasker and entered a plea of guilty to the two-count Indictment. After the government provided a factual basis for the plea, the court accepted the plea and scheduled sentencing for October 15, 2002.

### Codefendants

(N) Javier Santiago-Fiol:    Docket #01-10333-MEL-01: Sentenced on 7/25/02 to one year and one day imprisonment, 4 years of supervised release. The case is pending appeal in the U.S. Appeals Court for the First Circuit.

### Related Cases

(O) Curtis Strickland:    Docket #01-10351-JLT: Pending
    Omay Ford:    Docket #01-10351-JLT: Pled guilty to Conspiracy to Possess with Intent to Distribute and Distribution of Cocaine Base, and to Distribution of Cocaine Base; Aiding and Abetting. Sentenced on April 24, 2002 to 120 months custody, 5 years supervised release, and $200 special assessment.

### Plea Agreement

(P) The plea agreement is attached to this report.

### Offense Conduct

(1) The following statement of the offense was submitted by Assistant United States Attorney, Dickens Mathieu:

(2) Javier Santiago-Fiol and **Narciso Franco** were arrested on July 12, 2001, as a result of the cooperation of a Confidential Informant ("CI"). Approximately one hour before Santiago-Fiol and **Franco** were arrested, the CI had been arrested for distribution of crack cocaine after the CI was observed engaging in a hand-to-hand crack transaction with the target of a Drug Enforcement

3

EXHIBIT 5

15

1          THE COURT:  You will be 36 maybe when you

2     come out.  Your children will still be pretty young, and

3     I hope that you can rebuild your life.

4          MR. McCALL:  Your Honor, could I --

5          THE COURT:  Oh.  Yes.  The defendant should

6     know, you have a right to appeal from my sentence to the

7     extent that you believe that I've done anything

8     improperly or illegally.

9          MR. MATHIEU:  Your Honor, I just want to make

10     a couple of clarifications for the record because it's

11     possible that the defendant could later file a motion

12     pursuant to 18 U.S.C. 2255.  And I just want to clarify

13     the calculations here and also just make sure that --

14     the Court had earlier mentioned that the defendant is

15     being sentenced at this time for importation of heroin.

16     And I just wanted to clarify the Court's understanding

17     that it is, in fact, distribution of heroin and

18     conspiracy to distribute it as opposed to import heroin.

19          THE COURT:  He pleaded guilty to both.

20          MR. MATHIEU:  Yes, Your Honor.  I just wanted

21     to clarify the precise conviction that he's been

22     sentenced on.  And then also I just wanted to confirm

23     that the sentence is based on the defendant not

24     receiving any reduction for acceptance of responsibility

25     and that the Court did also not enhance him for role and

16

1    that also there was no reduction for the safety valve.

2              THE COURT:  That's correct.

3              MR. MATHIEU:  Thank you, Your Honor.

4              MR. McCALL:  So essentially, again, just by

5    way of clarification, the Court is finding he does not

6    qualify for the safety valve?

7              THE COURT:  Yes.

8              MR. McCALL:  And I assume that's a category

9    five -- I mean, criteria five in the proffer?

10             THE COURT:  Yes.  Yes.

11             MR. McCALL:  I understand.  Thank you, Your

12   Honor.

13             THE CLERK:  All rise.  Court is now in

14   recess.)

15             (Whereupon the proceedings adjourned.)

16

17

18

19

20

21

22

23

24

25

EXHIBIT 6

9

1    partner. He did not join a partnership.

2         According to Pena, he was an employee. And

3    he sold ounce amounts of cocaine, not only to Ford, but

4    also to other customers of this individual. Pena's

5    report talks about selling ounce amounts to someone

6    named in East Boston, to another person at the Franklin

7    Hill projects in Dorchester all at the behest of this

8    defendant, who was his boss.

9         And I guess that leads me to the third, which

10   is role. And based on his role in the offense, Your

11   Honor, the defendant should be assessed a three-point

12   upward adjustment.

13        And starting at a base offense level of 26,

14   the government would suggest that the defendant should

15   then be assessed a three-level adjustment, which would

16   take him to a Level 29. No assessment should be

17   granted, and he certainly should not receive the benefit

18   of the safety valve. And based on that, the defendant

19   is looking at 87 to 108 months. And the government

20   would recommend 95 months.

21        **THE COURT:** Thank you.

22        Mr. Franco, sir, this is all about you. And

23   I'd like to hear what you have to say. Although my hand

24   is not free, it certainly is important to me to know

25   what the defendant wants to say before I impose

14

```
 1    firearm or other dangerous weapon and if ordered

 2    deported, the defendant is to leave the United States

 3    and not to return without prior permission of the United

 4    States Attorney General.

 5              It is further ordered that the defendant pay

 6    the United States a special assessment of $100 to be

 7    payable immediately.

 8              Now, Mr. Franco, while I didn't agree

 9    altogether with your attorney, I have put you at the

10    lower level of the category that applies.  You will be

11    given credit for what you've done already.  You will be

12    given days off for good behavior.

13              I want to take this occasion to express my

14    personal disagreement with the results of what the

15    Guidelines compel me to adopt on this occasion.  I

16    believe that Mr. Franco has learned his lesson; and I do

17    not agree with what the Guidelines suggest, which is the

18    result here of a sentence of more or less three years.

19    But it is not within my power to change that.

20              I'm telling the family, too, from what I've

21    read about your brother and your husband, he does not

22    seem to me to be a bad man.  But he made a very bad

23    mistake -- two bad mistakes.  For God's sake, don't do

24    it again.

25              THE DEFENDANT:  Thank you.
```

EXHIBIT 7

7

1              To give this defendant an acceptance of

2      responsibility would make a mockery of that provision.

3      Sure, he did notify the government that he was going to

4      plead guilty.  But then on the date that he was supposed

5      to plead guilty, he took off.  His excuse was that, My

6      girlfriend made me do it.  And that's just not

7      acceptable.

8              In the process, he not only caused the Court

9      and the U.S. Marshals to expend significant resources,

10     but he caused his own brother to forfeit $100,000 that

11     was tendered as bail.  There's no way that could be

12     construed as acceptance of responsibility.

13              THE COURT:  Well, no, but I don't think he

14     should be penalized further.

15              MR. MATHIEU:  Well, the acceptance of

16     responsibility element is not a penalty.  It's actually

17     a benefit to defendants who do actually show actual

18     remorse.

19              THE COURT:  True.

20              MR. MATHIEU:  Now, with respect to the safety

21     valve, Your Honor, the section that applies requires

22     that no later than the time of sentencing, the defendant

23     truthfully provide to the government all information

24     concerning the offense or offenses that he is a part of.

25     And as we set forth in our sentencing memorandum, the

1   defendant was not truthful.

2             And it's not just my feeling or the feeling

3   of the police agent who sat in on that proffer that he

4   was not truthful.  The proffer was not truthful based on

5   the other evidence that was obtained during the course

6   of the investigation.  And what the two defendants

7   before this Court are attempting to do, apparently, is

8   to point the finger at each other and say, Well, it was

9   his fault.  No, it was his fault.  And then they

10  cancelled each other out and they both get the benefit.

11            And there's no factual basis for this

12  defendant to get that benefit because the facts

13  corroborate what Martin Pena said and not what the

14  defendant said with respect to the defendant's

15  supervisory role, with respect to the defendant's

16  managerial role, with respect to the fact that it was

17  the defendant who paid Pena and the other co-defendant

18  who was not -- or who was not the co-defendant, the

19  other co-conspirator, Junior.

20            And the fact that it was Pena who made the

21  initial contact I think is immaterial.  The fact that a

22  worker seeks additional clients for his boss so that he

23  can get an additional commission does not make him less

24  of a worker; it might make him a better worker.  But it

25  doesn't mean that all of a sudden he's elevated to a