UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NARCISCO FRANCO, | ) | |
| Petitioner | ) | |
| | ) | Civil Action No. 05-10862-MEL |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Respondent | ) | |
| | ) | |

**Government's Notice Of Record Exhibits
In Support Of Its Memorandum In Opposition
To Petitioner's Motion Under 28 U.S.C. § 2255**

**<u>Introduction</u>**

The United States of America, by Michael J. Sullivan, United States Attorney, and

Michael J. Pelgro, Assistant U.S. Attorney, hereby files this notice of record exhibits in support of its

memorandum in opposition to the petitioner's motion under 28 U.S.C. § 2255. The government

submits herewith the following exhibits from the petitioner's underlying criminal case:

1.    Plea agreement dated July 25, 2002 signed by Narciso Franco;

2.    Transcript of Rule 11 hearing on July 25, 2002 in <u>United States v. Narciso Franco,</u>

Criminal No. 01-10333-MEL;

3.    Defendant Narciso Franco's sentencing memorandum filed by Attorney James McCall

in December 2002;

4.    Government's sentencing memorandum filed by AUSA Dickens Mathieu in December

2002;

5.    Transcript of Narciso Franco's sentencing hearing on December 4, 2002 in United States v. Narciso Franco, Criminal No. 01-10333-MEL;

6.    Cover and table of contents page from Narciso Franco's brief in his direct appeal to the Court of Appeals, No. 02-2660;

7.    Docket entries from the Court of Appeals in No. 02-2660 (Court of Appeals judgment on November 24, 2004 appears on p. 12);

8.    Transcript of codefendant Martin Pena's sentencing hearing on July 10, 2002; and

9.    Transcript of codefendant Martin Pena's sentencing hearing on July 25, 2002.

Respectfully submitted,
MICHAEL J. SULLIVAN
United States Attorney

By:    /s/Michael J. Pelgro
Michael J. Pelgro
Assistant U.S. Attorney

DATED:    August 23, 2005.

2

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served upon the person listed below a copy of the

foregoing document by depositing in the United States mail a copy of same in an envelope bearing

sufficient postage for delivery:

> Narciso A. Franco
> Inmate No. 23787-038
> FSL Elkton, Unit H/A
> P.O. Box 10
> Lisbon, OH 44432

This 23rd day of August 2005.

/s/Michael J. Pelgro
MICHAEL J. PELGRO
ASSISTANT UNITED STATES ATTORNEY

3



RECEIVED
U.S. PROBATION

 2002 JUL 31  AM 8: 30

BOSTON-NEW CTHSE.

**U.S. Department of Justice**

*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*                      *United States Courthouse, Suite 9200*
*Dickens Mathieu Direct Line: (617) 748-3227*           *1 Courthouse Way*
                                                        *Boston, Massachusetts 02210*

July 25, 2002

James E. McCall, Esquire
4 Longfellow Place
Boston, MA 02114

     Re:  <u>United States v. Santiagofiol, et al.</u>
          Criminal No. 01-10333-MEL

Dear Counsel:

    This letter sets forth the Agreement between the United States
Attorney for the District of Massachusetts ("the U.S. Attorney") and
your client, Narciso Franco ("Defendant"), in the above-captioned case.
The Agreement is as follows:

    1.  <u>Change of Plea</u>

    At the earliest practicable date, Defendant shall plead guilty to
Counts One and Two of the Indictment.  Defendant expressly and
unequivocally admits that he in fact committed the crimes charged in
these Counts of the Indictment, and is in fact guilty of those
offenses.

    2.  <u>Penalties</u>

    Defendant faces the following penalties:

A minimum mandatory term of imprisonment of five years; a maximum term
of imprisonment of 40 years;  A fine of up to $2,000,000; at least
three years of supervised release; and a $100 mandatory special
assessment for each count of conviction.

    Defendant may also be deportable and/or excludable by the United
States Immigration and Naturalization Service as a consequence of his
conviction of the offenses to which he is pleading guilty.

**Exhibit 1**

James E. McCall, Esquire
July 25, 2002
Page 2

    3.   <u>Sentencing Guidelines</u>

The parties will take the following positions at sentencing under the United States Sentencing Guidelines:

      (a)   Counts One and Two of the Indictment involved a total of 500-2000 grams or more of cocaine.

      (b)   Defendant should be assessed a two-point upward adjustment in his offense level pursuant to §3C1.1 as a result of his intentional failure to appear in court for a scheduled Rule 11 hearing.

      (c)   Defendant will take the position that notwithstanding his failure to appear, the Court should nonetheless reduce by three levels Defendant's Adjusted Offense Level under U.S.S.G. § 3E1.1. The U.S. Attorney will recommend that Defendant not receive a reduction in Offense Level for acceptance of responsibility.

    4.   <u>Sentence Recommendation</u>

      (a)   The U.S. Attorney agrees to recommend a sentence within the applicable guideline range, as determined at sentencing, but not lower than any applicable minimum mandatory term of imprisonment.

      (b)   The U.S. Attorney and Defendant will not move for a departure unless they give written notice to the other party of the basis for such departure not less than fourteen days before sentencing. Any basis for departure for which written notice is not received at least fourteen days before sentencing is hereby expressly waived and cannot be argued at the time of sentencing.

      (c)   In the event of an appeal from, or collateral challenge to, Defendant's sentence, the U.S. Attorney reserves his right to argue the correctness of Defendant's sentence and the manner in which the District Court determines it.

James E. McCall, Esquire
July 25, 2002
Page 3

    5.    <u>Payment of Mandatory Special Assessment</u>

    Defendant agrees to pay the mandatory special assessment to
the Clerk of the Court on or before the date of sentencing,
unless Defendant establishes to the satisfaction of the Court
that Defendant is financially unable to do so.

    6.    <u>Court Not Bound By Agreement</u>

    The sentencing recommendations made by the parties and their
respective calculations under the Sentencing Guidelines are not
binding upon the U.S. Probation Office or the sentencing judge.
Within the maximum sentence which Defendant faces under the
applicable law, the sentence to be imposed is within the sole
discretion of the sentencing judge. Defendant's plea will be
tendered pursuant to Fed. R. Crim. P. 11(e)(1)(B). Defendant may
not withdraw his plea of guilty regardless of what sentence is
imposed. Nor may Defendant withdraw his plea because the U.S.
Probation Office or the sentencing judge declines to follow the
Sentencing Guidelines calculations or recommendations of the
parties. In the event that the sentencing judge declines to
follow the Sentencing Guidelines calculations or recommendations
of the U.S. Attorney, the U.S. Attorney reserves the right to
defend the sentencing judge's calculations and sentence in any
subsequent appeal or collateral challenge.

    7.    <u>Rejection of Plea By Court</u>

    Should Defendant's guilty plea not be accepted by the Court
for whatever reason, or later be withdrawn on motion of
Defendant, this Agreement shall be null and void at the option of
the U.S. Attorney.

    8.    <u>Breach of Agreement</u>

    If the U.S. Attorney determines that Defendant has failed to
comply with any provision of this Agreement, has violated any
condition of his pretrial release, or has committed any crime
following his execution of this Agreement, the U.S. Attorney may,
at his sole option, be released from his commitments under this
Agreement in their entirety by notifying Defendant, through
counsel or otherwise, in writing. The U.S. Attorney may also
pursue all remedies available to him under the law, irrespective
of whether he elects to be released from his commitments under
this Agreement. Further, the U.S. Attorney may pursue any and
all charges which have been, or are to be, dismissed pursuant to

James E. McCall, Esquire
July 25, 2002
Page 4

this Agreement. Defendant recognizes that no such breach by his
of an obligation under this Agreement shall give rise to grounds
for withdrawal of his guilty plea. Defendant understands that,
should he breach any provision of this agreement, the U.S.
Attorney will have the right to use against Defendant before any
grand jury, at any trial or hearing, or for sentencing purposes,
any statements which may be made by her, and any information,
materials, documents or objects which may be provided by his to
the government subsequent to this Agreement, or pursuant to the
proffer agreement previously entered in this case, without any
limitation. In this regard, Defendant hereby waives any defense
to any charges which he might otherwise have under any statute of
limitations or the Speedy Trial Act.

9.    Who Is Bound By Agreement

    This Agreement is limited to the U.S. Attorney for the
District of Massachusetts, and cannot and does not bind the
Attorney General of the United States or any other federal, state
or local prosecutive authorities.

10.    Complete Agreement

    This letter contains the complete and only agreement between
the parties relating to the disposition of this case. No
promises, representations or agreements have been made other than
those set forth in this letter. This Agreement supersedes prior
understandings, if any, of the parties, whether written or oral.
This Agreement can be modified or supplemented only in a written
memorandum signed by the parties or on the record in court.

    If this letter accurately reflects the Agreement between the
U.S. Attorney and Defendant, please have Defendant sign the
Acknowledgment of Agreement below. Please also sign below as
Witness. Return the original of this letter to Assistant U.S.
Attorney Dickens Mathieu.

James E. McCall, Esquire
July 25, 2002
Page 5

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By :

JAMES B. FARMER
Assistant U.S. Attorney
Chief, Criminal Division

STEPHEN P. HEYMANN
Assistant U.S. Attorney
Deputy Chief,
Criminal Division

DICKENS MATHIEU
Assistant U.S. Attorney

James E. McCall, Esquire
July 25, 2002
Page 5

<u>ACKNOWLEDGMENT OF PLEA AGREEMENT</u>

    I have had this letter read to me in my native language in
its entirety and discussed it with my attorney.    I hereby
acknowledge that it fully sets forth my agreement with the United
States Attorney's Office for the District of Massachusetts.    I
further state that no additional promises or representations have
been made to me by any official of the United States in
connection with this matter. I understand the crimes to which I
have agreed to plead guilty, the maximum penalty for those
offenses and Sentencing Guideline penalties potentially
applicable to them.    I am satisfied with the legal representation
provided to me by my attorney.    We have had sufficient time to
meet and discuss my case.    We have discussed the charges against
me, possible defenses I might have, the terms of this Plea
Agreement and whether I should go to trial.    I am entering into
this Agreement freely, voluntarily, and knowingly because I am
guilty of the offense to which I am pleading guilty and I believe
this Agreement is in my best interest.


Narciso Franco
Defendant

Date: 7/25/0r


    I certify that Narciso Franco has read this Agreement, or
had this Agreement read to him in his native language, and that
we have discussed its meaning.    I believe he understands the
Agreement and is entering into the Agreement freely, voluntarily
and knowingly.


James E. McCall, Esq.
Attorney for Defendant

Date: 7/25/0r

1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES DISTRICT COURT
RECEIVED IN
CLERK'S OFFICE

APR 0 8 2004

MASS. DIST.

```
* * * * * * * * * * * * * *
UNITED STATES OF AMERICA,     *
                              *
        Plaintiff,            *
                              *
                              *
    Vs.                       *   Criminal Action
                              *   No. 1:01-010333-002
                              *
NARCISCO FRANCO,              *
                              *
        Defendant.            *
* * * * * * * * * * * * * *
```

BEFORE:  THE HONORABLE MORRIS E. LASKER
SENIOR U.S. DISTRICT COURT JUDGE
RULE 11 HEARING
July 25, 2002

APPEARANCES:

         United States Attorney's Office (By Dickens
Mathieu, Esq.) U.S. District Court, One Courthouse
Way, Boston, Massachusetts 02210, on behalf of the
Plaintiff

         James E. McCall, Esq., 4 Longfellow Place,
Boston, Massachusetts 02114, on behalf of the Defendant


                    Courtroom No. 8
                    1 Courthouse Way
                    Boston, Massachusetts 02210


              Deborah L. Crossman, RPR
              Official Court Reporter
              3507 United States Courthouse
                                         02210

Exhibit 2

DOCKETED

H7

1                    P R O C E E D I N G S

2            THE CLERK:  This is The United States of

3    America vs. Narcisco Franco, Criminal 01-10333.  Would

4    the attorneys please identify themselves and who they

5    represent for the Court.

6            MR. MATHIEU:  Dickens Mathieu for the

7    United States, Your Honor.

8            MR. McCALL:  James McCall for Narcisco

9    Franco.  Good morning, Your Honor.

10            THE COURT:  Good morning.

11            Has the interpreter been sworn?

12            MARGARITA CARDENAS, INTERPRETER, SWORN

13            THE CLERK:  Would you give your full name

14    to the Court.

15            THE INTERPRETER:  Margarita Cardenas,

16    C-A-R-D-E-N-A-S.

17            THE COURT:  Very good.

18            Mr. McCall, I understand that we are here

19    this morning because your client wishes to plead

20    guilty to Indictment 01-10333; is that correct?

21            MR. McCALL:  That's correct, Your Honor.

22            THE COURT:  Is he pleading to both counts

23    of the indictment?

24            MR. McCALL:  Yes.

25            THE COURT:  Very good.

1           Now, Mr. McCall, let me ask you a few

2     questions.  How long have you represented Mr. Franco?

3     Approximately.

4           MR. McCALL:  Since the date of his --

5     since July.  Since July of 2001.  A long time, Your

6     Honor.

7           THE COURT:  Yes.  And how much time would

8     you say you've spent with him going over the counts of

9     the indictment and the consequences of his not

10    appearing when required?

11          MR. McCALL:  Judge, he was out on

12    conditions of release.  We had many visits in my

13    office -- 15 to 20 hours.

14          THE COURT:  All right.  Are you satisfied

15    that he understands the nature of the charges against

16    him?

17          MR. McCALL:  Yes, Your Honor.

18          THE COURT:  And the fact that he's going

19    to be penalized for not having appeared earlier when

20    he was required to?

21          MR. McCALL:  He definitely understands

22    that, Your Honor.

23          THE COURT:  And are you satisfied that if

24    the government -- that if the defendant went to trial

25    here, the government would prevail on these charges?

4

1              MR. McCALL:  I believe they have a very

2      strong case, Your Honor.  Yes, sir.

3              THE COURT:  Very good.  Please be seated.

4              MR. McCALL:  Thank you.

5              THE COURT:  Mr. Franco, would you stand,

6      please.

7              Good morning, Mr. Franco.  How are you

8      today?

9              THE DEFENDANT:  (In English) Very good,

10     sir.

11             THE COURT:  Mr. Franco, how old are you?

12             THE DEFENDANT: (Through the interpreter)

13     32.

14             THE COURT:  And how much school have you

15     had?

16             THE DEFENDANT:  (Through the interpreter)

17     High school.

18             THE COURT:  Where did you go to high

19     school?

20             THE DEFENDANT:  (Through the interpreter)

21     Dominican Republic.

22             THE COURT:  What kind of work have you

23     done in your life?

24             THE DEFENDANT:  (Through the interpreter)

25     Housekeeping.

5

1              THE COURT:  Are you in good health?

2              THE DEFENDANT:  (In English) Yes, Your

3       Honor.

4              THE COURT:  Have you ever been addicted to

5       drugs or alcohol?

6              THE DEFENDANT:  (In English) No, Your

7       Honor.

8              THE COURT:  Are you under the influence of

9       any drug or sedative right now?

10             THE DEFENDANT:  (In English) No, Your

11      Honor.

12             THE COURT:  Are you thinking clearly?

13             THE DEFENDANT:  (In English) Yes, Your

14      Honor.

15             THE COURT:  I understand from your

16      attorney that you wish to plead guilty to the counts

17      of the indictment here; is that correct?

18             THE DEFENDANT:  (In English) Yes, Your

19      Honor.

20             THE COURT:  All right.  What I'm going to

21      do is to talk about what these charges are and make

22      sure that you understand what the possible penalties

23      are and make sure that you understand what your rights

24      are with regard to going to trial, if you wanted to do

25      so, and that you know what you're doing when you plea

1    guilty because I don't want to take your plea unless I

2    know that the man knows what he's doing.  Do you

3    understand?

4              THE DEFENDANT:  (In English) Yes, Your

5    Honor.

6              THE COURT:  Okay.  Now, as I read the

7    indictment, it charges that about a year ago, on July

8    12th, 2001, you and Mr. Santiagofiol, also known as

9    Mr. Pena, agreed to distribute cocaine and that you

10   actually possessed cocaine for that purpose.

11             Are those the two counts that you wish to

12   plead guilty to?

13             THE DEFENDANT:  (In English) Yes, Your

14   Honor.

15             THE COURT:  And would you tell me in your

16   own words, Mr. Franco, just what you did that makes

17   you guilty of those charges.

18             THE DEFENDANT:  (Through the interpreter)

19   Well, I sold that drug.

20             THE COURT:  You actually sold it?

21             THE DEFENDANT:  (Through the interpreter)

22   Yes.

23             THE COURT:  And you knew what it was?

24             THE DEFENDANT: (Through the interpreter)

25   Yes.

1        THE COURT:  Okay.  Now, I understand that

2   you entered into a plea -- well, let me back up.  I

3   want to be sure that you understand what the maximum

4   possible penalties are.  First of all, let me tell you

5   what the penalty is as set by Congress.

6        Under these circumstances, a possible

7   penalty of up to 40 years in prison can be imposed by

8   this Court.  However, the actual sentence is usually

9   governed by what are called the guidelines.  And under

10  the guidelines, you face a mandatory minimum of five

11  years' imprisonment followed by supervised release.

12        I want to be sure that you understand that

13  because a mandatory minimum means I have no control

14  over that situation.  Do you understand that?

15        THE DEFENDANT:  (In English) Yes, Your

16  Honor.

17        THE COURT:  And there's also a possible

18  fine, although I doubt that you have any money to pay

19  a fine.  And there will be supervised release for

20  several years after your release from prison and a

21  mandatory assessment of -- is it $100 in this case?

22        MR. MATHIEU:  200, Your Honor.

23        THE COURT:  -- $200 that you'll have to

24  pay.  I want to be sure that you understand those

25  penalties.  Do you understand them?

8

1          THE DEFENDANT:  (In English) Yes, Your

2    Honor.

3          THE COURT:  Okay.  Now, let me be sure

4    that you understand what your rights are about going

5    to trial.  You know you don't have to plead guilty to

6    this offense.  You have the right to go to trial.  And

7    if you went to trial, the government would have to

8    prove its case beyond a reasonable doubt and persuade

9    all 12 members of the jury that you were guilty.  You

10   understand that if I take your plea of guilty, there

11   will be no such trial?

12         THE DEFENDANT:  (In English) Yes, Your

13   Honor.

14         THE COURT:  And you understand that at a

15   trial, you could be represented by your attorney,

16   Mr. McCall; you could question any witnesses against

17   you, cross-examine them; you could testify, if you

18   wish, in your own defense; or you could decline to

19   testify.  And if you chose not to testify, nobody

20   could hold that against you.  Do you understand you

21   would have those rights?

22         THE DEFENDANT:  (In English) Yes, I do.

23         THE COURT:  Do you understand that if I

24   accept your plea of guilty, you give up all those

25   rights?

1          THE DEFENDANT:  (In English) Yes, Your

2     Honor.

3          THE COURT:  And do you understand that if

4     I accept your plea of guilty, I can impose the same

5     penalty as could have been imposed if you had been

6     tried by the jury and found guilty by the jury?

7          THE DEFENDANT:  (In English) Yes, Your

8     Honor.

9          THE COURT:  And, finally, I just want to

10    be sure, Mr. Franco, that you're pleading guilty of

11    your own free will.  So I will ask you:  Has anybody

12    pressured you or anybody close to you to make you

13    plead guilty?

14         THE DEFENDANT:  (In English) No, Your

15    Honor.

16         THE COURT:  Aside from the plea agreement

17    which I understand you entered into with the

18    government and your lawyer, has anybody promised you

19    anything or promised anybody close to you anything to

20    make you plead guilty?

21         THE DEFENDANT:  (In English) No, Your

22    Honor.

23         THE COURT:  Are you pleading guilty of

24    your own free will?

25         THE DEFENDANT:  (In English) Yes, Your

1   Honor.

2               THE COURT:  And what is it that has made

3   you decide to plead guilty?

4               THE DEFENDANT:  (Through the interpreter)

5   Because I am guilty of the charges against me.

6               THE COURT:  Thank you very much.  Please

7   be seated.

8               THE DEFENDANT:  (In English) Thank you,

9   Your Honor.

10              THE COURT:  I am satisfied that Mr. Franco

11  clearly understands the nature of his rights to a jury

12  trial, the possible maximum penalties for the charges

13  as to which he's pleaded guilty, that he has

14  voluntarily entered into a plea agreement with the

15  government, that he has voluntarily and intelligently

16  pled guilty to the charges contained in the

17  indictment, both counts, and that there is a factual

18  basis for his doing so.  I will accept the plea and

19  set a sentence date.

20              THE CLERK:  The sentencing date will be

21  October 15th at 2:15.

22              THE COURT:  Very good.  Thank you all.

23              MR. McCALL:  Thank you very much, Your

24  Honor.

25              THE CLERK:  All rise.

```
 1              (Whereupon the proceedings were

 2     adjourned.)

 3

 4

 5

 6

 7               C E R T I F I C A T E

 8

 9

10         I, Deborah L. Crossman, Official Court Reporter

11     for the United States District Court for the District of

12     Massachusetts, do hereby certify that the foregoing pages

13     are a true and accurate transcription of my shorthand notes

14     taken in the aforementioned matter to the best of my skill

15     and ability.

16

17

18

19

20              Deborah L. Crossman, RPR
                Official Court Reporter
21              3507 United States Courthouse
                One Courthouse Way
22              Boston, Massachusetts 02210
                (617)439-9190
23

24

25
```

*Ilions Mathew*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | DOCKET #: 01-10333-MEL |
| ) | |
| NARCISSO A. FRANCO ) | |

### DEFENDANT'S SENTENCING MEMORANDUM

The defendant respectfully submits this sentencing memorandum to assist the
Court in its determination of what an appropriate and lawful sentencing should be.

### THE DEFENDANT SHOULD BE SENTENCED TO THE LOW END OF THE APPLICABLE GUIDELINE RANGE

The defendant, Narcisso A. Franco has no prior record. He has three children,
including a newborn to his girlfriend, Moriel Pena on July 6, 2002. The defendant's
failure to appear for his scheduled Rule 11 hearing on February 28, 2002, was a direct
result of intense pressure by his then pregnant girlfriend who threatened to "leave" the
defendant if he did not go to the Dominican Republic with her. The defendant has
acknowledged in his written plea agreement that he should be assessed a two-point
upward adjustment for obstruction of justice, pursuant to §3C1.1, as a result of his
intentional failure to appear. Thus the defendant is being penalized for his conduct in not
appearing, in a substantial way.

#### Acceptance of Responsibility

The defendant contends that he should be awarded a 3-level reduction for
acceptance of responsibility. The defendant has entered a plea agreement wherein he
agrees that should be assessed a two-point upward adjustment in his offense level for
obstruction of justice, pursuant to U.S.S.G. § 3C1.1, as a result of his intentional failure

Exhibit 3

to appear in court for a scheduled Rule 11 hearing. Notwithstanding this fact, the
defendant's acceptance in the instant case should be considered "extraordinary." To
determine whether a defendant's case is "extraordinary," such that his sentence may be
both adjusted upward under Sentencing Guidelines for obstruction of justice and
downward for acceptance of responsibility, the district court must consider the totality of
the circumstances, including the nature of the defendant's obstructive conduct and the
degree of his acceptance of responsibility. See, United States v. Honkin, 184 F.3d 961,
968 (8th Cir. 1999).

In the instant case, the Presentence Report in paragraphs 13-19 clearly points out
that the defendant's obstructive conduct was impulsive and was the result of immense
personal pressure brought to bear by his pregnant girlfriend. His acceptance was timely
in that he promptly notified the Government on two occasions that he intended to plead
guilty, thus saving the Government the burden and expense for preparing for trial.

Further, the fact that the defendant readily identified himself and engaged in no
obstructive conduct when captured, along with the fact that he has made a truthful proffer
to the Government, pursuant to 5C1.2, makes his acceptance extraordinary.

Role in the Offense

Although the Government does not specifically object to the lack of a role
enhancement and there is no provision for it in the signed plea agreement, the
Government, in its Sentencing Memorandum, is now seeking a three-level enhancement
for a managerial or supervisory role.

The probation officer has not applied for a role enhancement. The Pre-Sentence
Report states on page 24:

2

Here, despite Santiago-Fiol's claim that he and Junior "worked
for Franco" and that Franco "used" Santiago-Fiol for deliveries,
paying him $400 for over $1500 worth of cocaine delivered, other
evidence presented by the Government, particularly information
provided by the CI, indicate that Franco and Santiago-Fiol worked
together. The CI stated that Santiago-Fiol "was part of a larger
group of persons who worked together to deliver cocaine..." (PSR at
Paragraph 4). To order cocaine, the CI spoke not only with Santiago-Fiol,
but also with Franco himself. (PSR at Paragraph 5). Franco and Santiago-
Fiol delivered nine ounces of cocaine together. (PSR at Paragraph 6).
Franco and Santiago-Fiol were arrested together while delivering cocaine.
(PSR at Paragraph 8). <u>The Government confirmed with the Probation
Office that it was Santiago-Fiol, not Franco, who made the initial contact
with Omay Ford.</u> [emphasis added]. Although
Santiago-Fiol's proffer describes Franco's and Santiago-Fiol's respective
duties and responsibilities in carrying out the offense, the facts, when
taken as a whole, do not meet the standard to warrant a role enhancement.

<u>Safety Valve</u>

The probation office has determined (Paragraph 30) that the defendant meets

criteria 1-4 of U.S.S.G. § 5C1.1. The defendant has made a proffer and will address in

open-court why that proffer should be considered truthful. But the following is important

to consider in assessing the truthfulness of the defendant Franco's proffer:

1. The Government acknowledges in its Sentencing Memorandum, on

   page 6, that according to Omay Ford, it was the co-defendant, Pena

   (Santiago-Fiol) who recruited Ford as a cocaine customer.

2. The Government's assertion on page 7 that Franco described himself

   as a minor cocaine dealer who was enticed into more significant drug

   dealing by Martin Pena is conclusory and self-serving. The

   Government admits it was the co-defendant Pena who made the

   contact with Ford, who turned out to be a buyer of ounce quantities

   from Franco and Pena. The Government's statement that "Pena was a

3

Sentencing Options

| | |
|---|---|
| With Obstruction<br>No Acceptance<br>No Safety Valve | Level 28 |
| With obstruction<br>With Acceptance (-3)<br>With Safety-Valve (2D1.1(b) (-2) | Level 23 |
| With obstruction<br>No Acceptance<br>With Safety Valve | Level 26 |
| With Obstruction<br>With Acceptance<br>No Safety-Valve | Level 25 |

Respectfully Submitted,
Narcisso Franco

James E. McCall
4 Longfellow Place
Suite 3703
Boston, MA 02114
(617) 720-2900
BBO #: 327365

was served upon the attorney of record for each party and upon any party appearing pro se by first class mail, postage prepaid or by hand delivery

Dated: 2-4-08

4

FILED
IN CLERK'S OFFICE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2002 DEC -3 P 3: 20

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES OF AMERICA )
                         )
            v.           )    CRIMINAL NO. 01-10333RMBL
                         )
NARCISO FRANCO          )

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America hereby files its memorandum regarding the sentencing of defendant Narciso Franco ("Franco"). Specifically, this memorandum addresses three sentencing issues: (A) the Probation Office's failure to apply a role enhancement, (B) Franco's failure to satisfy subsection (5) of U.S.S.G. § 5C1.2(5) -- the "safety valve," and (C) Franco's failure to accept full responsibility.

**I.    PROCEDURAL BACKGROUND**

On July 13, 2001, Franco and a co-defendant Javier Santiago-Fiol, a/k/a Martin Pena ("Pena") were arrested when they showed up to sell cocaine to a government cooperator to whom they had previously sold cocaine on numerous occasions. On September 19, 2001, both defendants were named in a two-count indictment charging them with distribution of cocaine and conspiracy to distribute and possess cocaine with intent to distribute.

Franco remained in federal custody at the Plymouth County House of Corrections from July 13, 2001 until his release on conditions, on August 24, 2001. On that date, Franco was released on conditions, including electronic monitoring and a

Exhibit 4

$100,000 bond, 20 percent of which was paid in cash.  On February 28, 2002, Franco was scheduled for a Rule 11 hearing before this Court, but he failed to appear.  Franco thereafter remained a fugitive until May 17, 2002, when he was arrested by Deputy U.S. Marshals in Worcester, Massachusetts.  On July 25, 2002, Franco pleaded guilty to both counts of the indictment.  He is scheduled to be sentenced tomorrow, December 4, 2002.

## II.  ARGUMENT

### A.  Defendant's Role in the Offense

During the period that Franco was a fugitive, his codefendant, Pena, pleaded guilty, and came to the United States Attorney's office for a "safety valve" proffer pursuant to U.S.S.G. § 5C1.2(5).  During his proffer, Pena provided the following details regarding his involvement with Franco:

1.  Pena said that he and Franco are from the same home town in the Dominican Republic, Bani.  The two men met in Bani. Sometime in the summer of 2000, Pena and Franco encountered each other in Boston.  Sometime in the Fall of 2000, Pena began to sell cocaine on behalf of Franco.  According to Pena, the first time Franco propositioned Pena to sell cocaine for him, Pena refused.  Pena said that he agreed only after Franco approached him a second time, about one month later.

2.  Pena said that he and another Hispanic male named William Gonzalez, a/k/a Junior ("Gonzalez") both worked for

2

Franco, delivering cocaine to Franco's cocaine customers. Pena
said that Franco and Gonzalez maintained pagers, which they used
to keep in touch with, and to arrange drug transactions with,
Franco and Franco's client's. Pena said that Franco would obtain
the cocaine from his source(s) and provided the cocaine to Pena
and Gonzalez to make the deliveries.

3.    Pena said that, between the fall of 2000 and December
23, 2000 (when he returned to the Dominican Republic), he sold a
total of approximately 25-30 small balls of cocaine on behalf of
Franco. Pena said that Franco paid him approximately $1,400
before Pena left for the Dominican Republic.

4.    Pena returned from the Dominican Republic in January
2001, and started working for Franco again in February 2001, at
which time he began to sell ounces of cocaine. Pena recalls
delivering one ounce of cocaine to a client of Franco who lived
in the projects in East Boston, on approximately four separate
occasions, for a total of about four ounces. Pena also recalled
delivering to another client of Franco who lived in the projects
at Franklin Hill. For these deliveries, Pena used Franco's car.
Franco paid Pena approximately $400 for every $1,500 worth of
drugs Pena delivered.

5.    According to Pena, Franco orchestrated the two
deliveries of cocaine to Omay Ford on the day they were arrested,
July 12, 2001. He said that Franco told him that he would
accompany him and Gonzalez during the first delivery, because the

3

transaction involved a lot of cocaine, and he wanted to supervise
the deal personally. Franco also came to make the second
delivery, which also involved a significant amount of cocaine.

Pena was sentenced on July 25, 2002. At his sentencing,
Pena's base offense level was decreased by two levels pursuant to
§ 5C1.2(5), based on the government's representation that Pena
had been truthful during his proffer (or, at least, there was no
evidence to suggest that he had not been truthful). The Court
was also thereby permitted to sentence Pena without regard to the
otherwise applicable statutory 5-year mandatory minimum sentence.
Ultimately, Pena was sentenced to a term of imprisonment of one
year and one day. This sentence was only possible because of
Pena's "safety valve" proffer. The details of Pena's proffer
were provided to the Probation Office, in anticipation of the
preparation of a PSR for Franco. The DEA-6 report of Pena's
proffer is attached as Exhibit 1.

> **1.    Franco's offense level should be increased by
> three levels to reflect his managerial or
> supervisory role.**

U.S.S.G. § 3B1.1 provides for an increase in a defendant's
base offense level where the defendant's culpability was
aggravated by his or her role in the offense. Where the criminal
activity involved five or more participants, a 4-level increase
is applied if a defendant was an "organizer or leader," and a 3-
level increase is applied if a defendant was a "manager or

4

supervisor." U.S.S.G. § 3B1.1(a) and (b). Based on the evidence presented to Probation, Franco's base offense level should have been increased by three levels.

According to the information provided by Pena, Franco managed or supervised Pena and Gonzalez in the distribution of cocaine. Franco recruited Pena for the job. Franco employed both Pena and an individual named William Gonzalez ("Gonzalez") to sell cocaine on his behalf, and to service his cocaine clients. Franco maintained the clients, provided transportation, and paid Pena and Gonzalez for their labor. Moreover, the criminal activity involved at least five persons (Franco, Pena, Gonzalez, Omay Ford, and Curtis Strickland). Nevertheless, the Probation Office declined to enhance Franco's offense level to reflect his role. This refusal cannot be justified, unless Pena's statements are discredited.

There is no reason to believe that Pena misrepresented Franco's involvement. First, Pena's description of Franco's role is corroborated by the statements of coconspirator Omay Ford ("Ford"). Ford was arrested the same day that Pena and Franco were arrested, July 12, 2001. In fact, Pena and Franco were arrested only after Ford identified them as the source of the cocaine in his possession at the time of his arrest, and after Ford placed several recorded telephone calls to set up another cocaine transaction with Pena and Franco.

After his arrest, Ford signed a cooperation agreement with

5

the government, and was debriefed on several occasions.  The information Ford provided corroborates Pena's description of Franco as a manager or supervisor.  According to Ford, although Pena recruited him as a cocaine customer, when Ford had a problem with the quality of the cocaine, it was Franco who eventually showed up to handle the matter.  Franco made the decision to "front" the cocaine to Ford, and to allow Ford to pay for the cocaine at a later date.  Ford also stated that William Gonzalez, a/k/a "Junior" once told him, "I just deliver for these guys and then get paid."  Finally, during his proffer, Pena said that on the date of the arrests, Franco came to supervise both cocaine transactions, because of the large amounts of cocaine involved.  Ford stated that during the first transaction that day, Franco arrived on the scene with Pena and Gonzalez, but it was Pena and Gonzalez who actually engaged in the distribution, while Franco waited in another vehicle.  The DEA-6 report reflecting Ford's statements during his debriefings is attached as Exhibit 2.

In addition, not only were Franco and Pena drug associates, they also come from the same hometown in the Dominican Republic -- Bani.  Pena knew that he would be deported to the Dominican Republic, after serving his sentence.  At the time of Pena's proffer, Franco was a fugitive, but a future encounter between Pena and Franco was almost certain, given that Franco has at least one child with Pena's first cousin, who also lives in Bani, with Franco's child.  Thus, there is no reason to believe that

6

Pena's description of Franco's managerial or supervisory role is unreliable.

Accordingly, based on his role in the offense, Pena should be assessed a three-level increase in his base offense level.

**B.    Defendant's Failure to Satisfy the "Safety Valve"**

On December 2, 2002, Franco himself came to the United States Attorney's office and provided a proffer pursuant to U.S.S.G. § 5C1.2.  In addition to the undersigned AUSA and Franco's attorney, the proffer was attended by DEA Special Agent Joseph Tamuleviz.  Patricia Bluestein provided Spanish translation.  The government does not believe that Franco truthfully provided all information and evidence he had concerning the offenses that were part of the same course of conduct or of a common scheme or plan as the offenses of conviction.

Specifically, the government believes that Franco was not truthful about his role in the offense.  Franco minimized his involvement, portraying Pena as the principal offender, while describing himself was a minor cocaine dealer who was enticed into more significant drug dealing by Martin Pena.  In addition to not making sense on their own, Franco's statements were contradicted by the proffer statements of both Pena and Ford.

For example, according to Franco, Pena was a marijuana user who recruited cocaine clients, which he then shared with Franco.

7

Franco stated that Pena asked him to become a partner of Pena in the cocaine business, and shared profits with him, because Franco had an automobile, which Pena needed in order to deliver cocaine to his clients. Franco could not explain why this was the case, given that Pena owned a motorcycle. Franco's account of his offense conduct was also inconsistent in other respects. Perhaps the most glaring inconsistency lies in Franco's claim that Pena had already secured Omay Ford as a cocaine client in January 2001, and that the first sale of cocaine to Ford occurred in February 2001. In fact, Ford was in prison until February 23, 2001, and did not meet Pena until March 2001. Although such an error could normally be attributed to a miscalculation of the dates involved, Franco was very specific about the dates, tying them to his travels to the Dominican Republic. The government believes that Franco fabricated the time period in order to distance himself from Ford, and to place more responsibility on Pena.

In addition, the government does not believe that Franco was truthful about the drug amounts involved in the conspiracy. Franco claimed that other than the ounce-amounts of cocaine he, Pena and Gonzalez sold to Ford, Franco had only sold small, $40 balls of cocaine to three other clients. This claim is not credible, however, in light of Franco's dealings with Ford. Ford stated that he purchased cocaine from Pena and Franco on eight or nine occasions. Ford stated that he purchased cocaine from them

himself personally contacted Ford on the telephone and in person,
to assure Ford that they could continue to do business together.
Franco's minimization of the drug amount is also contradicted by
Pena's statements that he personally delivered ounce-amounts of
cocaine to a clients of Franco in Dorchester and East Boston.

Based on the foregoing, Franco failed to truthfully admit
his involvement in the criminal activity at issue. Accordingly,
the government does not believe that Franco has satisfied
subsection (5) of § 5C1.2, and therefore should not be awarded a
further two-level decrease in his base offense level.
Furthermore, Franco is not eligible to be sentenced without
regard to the applicable statutory minimum sentence.

C.    **Defendant's Failure to Accept Responsibility**

Under U.S.S.G. § 3E1.1, the sentencing court may grant a
downward adjustment to a defendant if the court finds, by a
preponderance of the evidence, that the defendant has accepted

9

responsibility for his offense.[1]  The defendant seeking an

adjustment under § 3E1.1 bears the burden of proving his

entitlement to it.  <u>United States v. Nunez-Rodriguez</u>, 92 F.3d 14,

17 (1st Cir. 1996) (citing <u>United States v. Gonzales</u>, 12 F.3d

298, 300 (1st Cir. 1993)).  The Probation Office already has

concluded that Franco should not be awarded any credit for

acceptance of responsibility.  <u>See</u> PSR, ¶ 28.  This is based on

the Probation Office's finding that Franco failed to appear in

February 28, 2002 -- conduct for which Franco's offense level was

increased by two points, pursuant to U.S.S.G. § 3C1.1

(Obstructing or Impeding the Administration of Justice).  <u>See</u>

PSR, ¶¶ 12-19.

However, in addition to Franco's obstruction of justice,

Franco also has failed to accept full responsibility for his

criminal conduct.  Specifically, Franco was not truthful during

his safety valve proffer about his own involvement in the

offense, including falsely denying additional relevant conduct

for which he is accountable under § 1B1.3.  For example, Franco

denied responsibility for his management/supervision of Pena and

Gonzalez.  He denied paying them, supplying them with cocaine, or

paying them for their services.  Franco's statements are

---

[1]      At sentencing, the district court makes findings of
fact under a preponderance of the evidence standard.  <u>See</u>, <u>e.g.</u>,
<u>United States v. Lombard</u>, 72 F.3d 170, 175-76 (1st Cir. 1995);
<u>United States v. Gonzalez-Vazquez</u>, 34 F.3d 19, 25 (1st Cir.
1994); <u>United States v. LaCroix</u>, 28 F.3d 223, 231 (1st Cir.
1994).

contradicted by the independent statements of Pena and Ford, and
are not consistent with acceptance of responsibility.

## III. CONCLUSION

For the foregoing reasons, Franco should not be awarded
reductions for the safety valve or acceptance of responsibility.
In addition, he should be assessed a three-level role increase,
and be sentenced subject to the statutory minimum mandatory
sentence.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:    _____
Dickens Mathieu
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

This is to certify that I have this 3rd day of December,
served upon James McCall, Esquire, counsel for defendant Narciso
Franco, a copy of the foregoing document by hand delivery.

_____
DICKENS MATHIEU

11

U.S. Department of Justice
Drug Enforcement Administration

| **REPORT OF INVESTIGATION** | | | | Page 1 of 3 | |
|---|---|---|---|---|---|
| 1. Program Code | 2. Cross File | Related Files | 3. File No. ▓▓▓▓▓ | | 4. G-DEP Identifier |
| 5. By: S/A J. Tamuleviz<br>At: NEFD<br>Task Force 1 | ☐<br>☐<br>☐<br>☐ | | 6. File Title ▓▓▓▓▓▓▓▓▓▓ | | |
| 7. ☐ Closed ☐ Requested Action Completed<br>☐ Action Requested By: | ☐ | | 8. Date Prepared | | |
| 9. Other Officers: AUSA Dickens Mathieu | | | | | |
| 10. Report Re: Debriefing of defendant Javier SANTIAGO-FIOL AKA Martin PENA on April 4, 2002. | | | | | |

## DETAILS

1. On April 4, 2002, defendant Javier SANTIAGO-FIOL AKA Martin PENA was debriefed at the US Attorney's Office, Boston, MA., relative to his role and or involvement in a cocaine distribution organization that resulted in his arrest on July 12, 2001.

2. On July 12, 2001 SANTIAGO-FIOL and his codefendant Narcisco FRANCO were arrested for violation of Title 21, USC Section 846, Conspiracy to possess with intent to distribute cocaine and Title 21, USC Section 841 (a) (1) Possession with intent to distribute cocaine and distribution of cocaine.

3. SANTIAGO-FIOL stated that he is from the same town in Santa Domingo, Bani, as FRANCO and that is where and how they met.

4. SANTIAGO-FIOL travels on a regular basis from Santa Domingo to the United States to receive medical treatment at Massachusetts General Hospital for a rare medical condition that SANTIAGO-FIOL is afflicted with.

5. On or about the fall of 2000, during one of SANTIAGO-FIOL'S trips to Boston, MA to receive medical treatment SANTIAGO-FIOL met FRANCO in Boston, MA. Beginning about the fall of 2000, SANTIAGO-FIOL stated that he started selling cocaine for FRANCO. SANTIAGO-FIOL stated that at first he refused to sell cocaine for FRANCO but that approximately one (1) month later SANTIAGO-FIOL decided to sell cocaine for FRANCO to make some money.

| 11. Distribution:<br>Division<br><br>District<br><br>Other | 12. Signature (Agent)<br>S/A Joseph Tamuleviz | 13. Date<br>10-07-02 |
|---|---|---|
| | 14. Approved (Name and Title)<br>Gregory A. White<br>Group Supervisor | 15. Date<br>10/10/02 |

DEA Form     - 6
(Jul. 1996)
    JT
1 - Prosecutor

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

U.S. Department of Justice
Drug Enforcement Administration

| | | |
|---|---|---|
| **REPORT OF INVESTIGATION** *(Continuation)* | 1. File No. | 2. G-DEP Identifier |
| | 3. File Title | |
| 4. Page  2  of  3 | | |
| 5. Program Code | 6. Date Prepared | |

6. SANTIAGO-FIOL stated that he started out selling eight balls of cocaine for FRANCO and that FRANCO would give SANTIAGO-FIOL $10.00 for each eight ball of cocaine that he sold. SANTIAGO-FIOL stated that he sold most of the cocaine in the Fenway area and also along Tremont St., Boston, MA.

7. SANTIAGO-FIOL stated that William GONZALEZ AKA ░ JUNIOR░  also was selling cocaine for FRANCO.

8. SANTIAGO-FIOL stated that on December 23, 2001, he returned to Santa Domingo for a few weeks.  Before SANTIAGO-FIOL returned to Santa Domingo, he stated that FRANCO gave him $400.00.

9. SANTIAGO-FIOL stated that he sold eight balls of cocaine approximately 28 to 30 times for FRANCO during the fall and early winter of 2001.

10. SANTIAGO-FIOL stated that he returned to the United States in January of 2001 and in February started selling ounce quantities of cocaine for FRANCO. SANTIAGO-FIOL stated that during this time period he made approximately three (3) to four (4) deliveries of cocaine per week for FRANCO.  FRANCO was paying SANTIAGO-FIOL approximately $400.00 to $500.00 per week for making the deliveries of cocaine.  SANTIAGO-FIOL also stated that he used FRANCO'S car to make the deliveries.

11. According to SANTIAGO-FIOL, in March of 2001, GONZALEZ introduced SANTIAGO-FIOL to Omay FORD.  GONZALEZ and SANTIAGO-FIOL started selling multi ounce quantities of cocaine to FORD for FRANCO.

12. On July 12, 2001, FRANCO telephonically contacts SANTIAGO-FIOL and tells SANTIAGO-FIOL that GONZALEZ is going to make a delivery of cocaine to FORD and that FRANCO and SANTIAGO-FIOL will follow GONZALEZ during the delivery of cocaine because there is a large amount of cocaine involved. According to SANTIANGO-FIOL, on the morning of July 12, 2001, FRANCO and SANTIAGO-FIOL are in one vehicle and GONZALEZ is in a second vehicle. FRANCO and SANTIAGO-FIOL follow GONZALEZ to the vicinity of FORD'S residence where they watch as GONZALEZ delivers cocaine to FORD.

13. SANTIAGO-FIOL stated that later on July 12, 2001, FRANCO contacts SANTIAGO-FIOL and makes arrangements with SANTIAGO-FIOL to make another

**DEA SENSITIVE**
Drug Enforcement Administration

**1 - Prosecutor**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

**U.S. Department of Justice**
Drug Enforcement Administration

| REPORT OF INVESTIGATION<br>*(Continuation)* | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| | 3. File Title | |

| 4.<br>Page   3   of   3 | |
|---|---|
| 5. Program Code | 6. Date Prepared |

delivery of cocaine to FORD on July 12, 2001.  While making the second
delivery of cocaine to FORD, SANTIAGO-FIOL and FRANCO are arrested.

### INDEXING

1. SANTIAGO-FIOL, Javier AKA Martin PENA ※ Naddis# 5312559

2. FRANCO, Narcisco ※ Naddis# 3747321

3. GONZALEZ, William AKA ※ JUNIOR※  ※ Naddis Negative, Dominican male, in
his early to mid 20's.

4. FORD, Omay ※ Naddis# 5312550

DEA Form     - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

**1 - Prosecutor**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

U.S. Department of Justice
Drug Enforcement Administration

## REPORT OF INVESTIGATION

Page 1 of 4

| 1. Program Code | 2. Cross File | Related Files | 3. File No. | 4. G-DEP Identifier |
|---|---|---|---|---|
| 5. By: S/A J. Tamulevic<br><br>At: NEFD<br>Task Force 1 | ☐<br>☐<br>☐ | | 6. File Title | |
| 7. ☐ Closed  ☐ Requested Action Completed<br>☐ Action Requested By: | ☐ | | 8. Date Prepared<br>08/22/01 | |

9. Other Officers: S/A Michael Cashman and TFA David Jung

10. Report Re: Debriefing of cooperating defendant OMay FORD (Protect) on July 17, 2001, July 31, 2001 and August 20, 2001.

### SYNOPSIS

On July 12, 2001 Omay FORD was arrested by members of Task Force 1 after FORD delivered approximately twelve (12) ounces of crack cocaine, Exhibit #5, to Curtis W. STRICKLAND. Immediately after his arrest, FORD cooperated with Law Enforcement Officers. FORD provided Law Enforcement Officers with information that resulted in the arrest of his SOS for cocaine, Martin PENA aka Javier SANTIAGOFIOL and Narciso FRANCO aka Angel M. PAGAN

### DETAILS

1. On the following dates, July 17, 2001, July 31, 2001 and August 20, 2001, cooperating defendant Omay FORD was debriefed about his knowledge of and involvement in a Dominican cocaine distribution organization that was distributing multi ounce to kilogram quantities of cocaine in the greater Boston, MA area.

2. FORD stated that he got out of jail on February 23, 2001. FORD and STRICKLAND have known each other for approximately fifteen (15) years having both lived in a apartment complex located at 483 Columbia Rd., Dorchester, MA.

3. FORD first meet PENA, whom FORD knew and referred to as "JAVIER", sometime in March of 2001. FORD stated that he was on Stoughton St.,

| 11. Distribution:<br>Division<br><br>District<br><br>Other | 12. Signature (Agent)<br><br>S/A Joseph Tamulevic | 13. Date<br>08-22-01 |
|---|---|---|
| | 14. Approved (Name and Title)<br>Gregory A. White<br>Group Supervisor | 15. Date<br>8/25/01 |

A Form - 6
(J. 1996)
JT
1 - Prosecutor

### DEA SENSITIVE
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION *(Continuation)* | 1. File No. ▓▓▓▓ | 2. G-DEP Identifier ▓▓▓ |
|---|---|---|
| | 3. File Title ▓▓▓▓▓▓▓▓▓ | |
| 4. Page 2 of 4 | | |
| 5. Program Code | 6. Date Prepared 08/22/01 | |

attempting to purchase marijuana. At the same time PENA was also on
Stoughton St., selling a car. FORD'S friend wanted to purchase the car
that PENA was selling and FORD acted as an interpreter for his friend.
FORD and PENA are fluent in Spanish. PENA is not fluent in English. It
was during this transaction that PENA asked FORD if he knew anyone who
needed cocaine. PENA also gave FORD a pager number 617-228-7666 as a
means to contact PENA if FORD wanted any cocaine.

4. Approximately two (2) weeks later FORD contacted PENA and ordered an
ounce of cocaine. FORD stated that when he ordered an ounce of cocaine,
PENA and associates always delivered thirty-one (31) grams. PENA charged
FORD $950.00 for the thirty-one (31) grams. To the best of FORD'S
recollection, PENA and another Hispanic male that FORD knew as "JUNIOR"
delivered to FORD the first thirty-one (31) grams of cocaine that he
purchased from this organization. According to FORD, "JUNIOR" is fluent
in both Spanish and English. "JUNIOR" told FORD one day that "I just
eliver for these guys and then get paid".

5. FORD stated that he cooked the cocaine he purchased and would snort
some of the crack cocaine and sell the remaining portion on the streets.

6. Approximately five (5) days after FORD made his initial purchase of
cocaine from PENA and company, FORD purchased an additional thirty-one
(31) grams of cocaine from PENA and "JUNIOR". During the second
transaction, FORD showed PENA where he resided so that any future drug
transactions could take place at FORD'S residence.

7. FORD made several additional purchases of cocaine from this
organization. On one of the cocaine transactions the organization sold
FORD some poor quality cocaine. When FORD attempted to cook the cocaine
into crack cocaine the process did not go very well due to the poor
quality of the cocaine. FORD was unable to sell the crack cocaine on the
streets and lost money. Therefore, FORD did not have any money to
purchase additional amounts of cocaine.

8. FORD did not contact the organization for several days due to the fact
that he did not have any money to purchase additional amounts of cocaine.
FORD stated that to the best of his recollection, PENA contacted him to

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

**1 - Prosecutor**

Department of Justice
.g Enforcement Administration

| | | 1. File No. ▮▮▮▮▮ | 2. G-DEP Identifier ▮▮▮ |
|---|---|---|---|
| **REPORT OF INVESTIGATION** *(Continuation)* | | 3. File Title ▮▮▮▮▮▮▮▮ | |
| 4. Page 3 of 4 | | | |
| 5. Program Code | | 6. Date Prepared 08/22/01 | |

inquire why FORD had not purchased cocaine from them recently.  FORD
explained that the last time he purchased cocaine from them, the cocaine
was of very poor quality and could not be cooked into crack cocaine and
FORD lost money from the cocaine transaction.  FORD further explained that
he did not have enough money to purchase additional amounts of cocaine.

9. According to FORD, he talked to an Hispanic male whom, at that time,
FORD did not know his name. This individual has subsequently been
identified as Narcisco Jimentel FRANCO. FORD stated that he talked to
FRANCO both on the telephone and in person about the poor quality of the
cocaine he recently purchased from his organization.  FORD further stated
that FRANCO, PENA and "JUNIOR" came to his apartment to discuss the
situation.  After the meeting, FRANCO told FORD that "they" could front
FORD cocaine on any additional purchases. After the meeting, FORD made
several additional purchases of cocaine from the organization.

10. FORD stated that he purchased cocaine approximately eight (8) or nine
(9) times in  total from FRANCO, PENA, "JUNIOR" and company.  FORD usually
purchased thirty-one (31) or  sixty-two (62) grams at a time from the
organization.  FORD further stated that he purchased one-hundred and
twenty-five (125) grams of cocaine from the organization approximately two
(2) or three (3) times.

11. FORD stated that prior to July 12, 2001 he met FRANCO on three
separate occasions.  Once when FORD and FRANCO discussed the poor quality
of the cocaine that FORD had purchased from FRANCO and his organization.
The second time was when FRANCO delivered cocaine to FORD and the third
time was when FORD made a payment for cocaine to FRANCO.

12. FORD stated that on July 12, 2001 he dropped his girlfriend off at
work and was driving his girlfriends car when he met up with FRANCO, PENA
and "JUNIOR" to purchase nine (9) ounces of cocaine.  At approximately
9:20 AM on July 12, 2001 FORD observed PENA, by himself, driving a green
Honda and FRANCO and "JUNIOR" in a Grey Honda on Glendale St., Dorchester,
MA.  On Glendale St., PENA pulls over in the green Honda and FRANCO and
"JUNIOR" pull up behind PENA.  "JUNIOR" exits the Grey Honda and gets into

---

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

**1 - Prosecutor**

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION | 1. File No. ███████ | 2. G-DEP Identifier ███████ |
|---|---|---|
| *(Continuation)* | 3. File Title ███████ | |
| 4.  Page  4  of  4 | | |
| 5. Program Code | 6. Date Prepared  08/22/01 | |

the green Honda with PENA.  FORD also gets into the green Honda.  Inside
the green Honda "JUNIOR" hands FORD the nine (9) ounces of cocaine.


13. FORD stated that FRANCO and associates wanted $7,200.00 for the nine
(9) ounces of cocaine.  After getting the nine (9) ounces of Cocaine, FORD
went to a friend's house on Columbia Rd., where FORD cut the nine (9)
ounces of cocaine with one-hundred and twenty-five (125) grams of baking
soda and cooked the cocaine into crack cocaine.  FORD then gave the crack
cocaine to STRICKLAND.  A short time later both STRICKLAND and FORD were
arrested.

14. On August 20, 2001 FORD listened to Exhibit N-26, several consenually
recorded telephone calls that FORD made on July 12, 2001 to his SOS for
cocaine.  FORD identified the voices on Exhibit N-26 as "JUNIOR" in one of
he first calls and FRANCO on the last two (2) calls that arranged a
ocaine transaction.

15. FORD stated that the organization that FRANCO, PENA and "JUNIOR" were
part of a very sophisticated organization that used Nextel cellular
telephones to communicate with each other.


**INDEXING**

1. FORD, Omay – ███████

2. PENA, Martin aka Javier SANTIAGFIOL – ███████

3. FRANCO, Narcisco aka Angel PAGAN – ███████

4. STRICKLAND, Curtis W. – ███████

---

A Form     - 6a
(Jul. 1996)

**DEA SENSITIVE**
**Drug Enforcement Administration**

**1 - Prosecutor**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES DISTRICT COURT
RECEIVED IN
CLERK'S OFFICE

OCT 01 2003

MASS. DIST.

```
* * * * * * * * * * * * * *
UNITED STATES OF AMERICA      *
                              *
              vs.             *      Criminal Action
                              *      No. 01-10333
NARCISCO A. FRANCO            *
* * * * * * * * * * * * * *
```

BEFORE THE HONORABLE MORRIS E. LASKER
SENIOR JUDGE, U.S. DISTRICT COURT
SENTENCING
December 4, 2002

APPEARANCES:

        UNITED STATES ATTORNEY'S OFFICE (by Dickens
Mathieu, Esq.) One Courthouse Way, Boston,
Massachusetts 02210, on behalf of the Government

        JAMES E. McCALL, ESQ., 4 Longfellow Place,
Boston, Massachusetts 02114, on behalf of the
Defendant

                        Courtroom No. 8
                        One Courthouse Way
                        Boston, Massachusetts 02210

                Deborah L. Crossman, RPR
                Official Court Reporter
                3507 United States Courthouse
                Boston, Massachusetts 02210

**Exhibit 5**

DOCKETED

P R O C E E D I N G S

1

2          THE CLERK:  All rise.  All those having

3     business before the United States District Court for the

4     District of Massachusetts, draw near, give your

5     attention, and you shall be heard.

6               Court is now in session.

7          THE COURT:  Good afternoon, everybody.

8          THE CLERK:  This is Criminal No. 01-10333.

9     And it's United States of America versus Narciso A.

10    Franco.  Would the attorneys please identify themselves

11    and who they represent.

12         MR. MATHIEU:  Good afternoon, Your Honor.

13    Dickens Mathieu for the United States.

14         MR. McCALL:  Good afternoon, Your Honor.

15    James McCall for the defendant, Narcisco Franco.

16         THE COURT:  All right.  Mr. Mathieu, I

17    received your memorandum and know what the position of

18    the government is.  Is there anything you want to add at

19    this time before I call on defense counsel?

20         MR. MATHIEU:  Will I have a chance to rebut,

21    Your Honor?

22         THE COURT:  Well, you'll have a chance to

23    respond to his argument.  All right.

24               Why don't we swear in the interpreter.

25    MARGUERITA CARDENAS, INTERPRETER, SWORN

1          THE CLERK:  Please give your full name,

2     spelling your last.

3          THE INTERPRETER:  Marguerita Cardenas,

4     C-A-R-D-E-N-A-S.

5          THE COURT:  Thank you, ma'am.

6          Mr. McCall.

7          MR. McCALL:  Yes, Your Honor.

8          THE COURT:  I'd like to hear what you have to

9     say about the appropriate sentence.

10          MR. McCALL:  Your Honor, did the Court

11     receive my memorandum?

12          THE COURT:  I'm sorry?

13          MR. McCALL:  Did the Court receive my

14     memorandum --

15          THE COURT:  Yes.

16          MR. McCALL:  -- sentencing memorandum?  Your

17     Honor, the defendant feels very strongly, first of all,

18     that he should not receive an enhancement for his role

19     in the offense.

20          Probation did a very thorough

21     investigation, prepared a report using the facts

22     provided to them by the government.  Probation did not

23     apply a role.  And I think that the defendant also

24     qualifies for the safety valve.  Probation notes that he

25     meets criteria one through four.

1       I was present for the proffer.  I

2   understand that the government feels that it wasn't

3   truthful.  However, I think the very facts that the

4   government uses to make that suggestion to the Court

5   supports our position.

6       It is undisputed that it was the co-defendant

7   who made the initial contact with the person who became

8   the cooperating witness.  And probation also has sort of

9   determined, Your Honor, that he and the co-defendant

10  were truly acting in tandem as joint venturers.

11      Just because they played perhaps certain

12  different roles -- maybe he was the one contacted on

13  quality -- but it was the co-defendant who, in essence,

14  orchestrated many of the deliveries.  They were acting

15  as a team.

16      So I think those positions, Your Honor -- I

17  think the defendant has a strong basis to make that

18  argument to the Court, which leads us to the next issue

19  of whether or not the defendant should be granted a

20  three-level reduction for acceptance of responsibility.

21      In the signed plea agreement, the defendant

22  has acknowledged that he should get a two-level increase

23  for obstruction of justice.  He failed to appear for a

24  Rule 11 hearing.  When he was apprehended, Your Honor,

25  my information from the government and the agent is that

1    he essentially immediately identified himself, didn't

2    engage in any obstructive conduct.  On two different

3    occasions he timely notified the government that this

4    would be a plea, thus saving the government from the

5    unnecessary burden of preparing for trial.

6           He also participated in a proffer that I was

7    present at.  And I would suggest to the Court that he

8    fully recounted his involvement in the offense that's

9    before the Court.

10           I would suggest to the Court that that

11    issue is for Your Honor to decide.  It's obviously in

12    the Court's discretion.

13           So the best-case scenario for Mr. Franco,

14    Your Honor, is that he doesn't receive a role

15    enhancement, that he does receive a three-level decrease

16    for acceptance of responsibility -- of course, he pled

17    guilty before the Court -- and also pursuant to

18    Guideline 2D1.1B, a two-level reduction for successfully

19    qualifying for the safety valve.

20           That would bring him to a Level 23, which

21    is a range of 46 to 57 months.  He has no prior record,

22    Your Honor.  He has a brother, and his ex-wife is

23    present in the courtroom.

24           I would suggest to the Court that he has

25    two children with his ex-wife.  And he has a brand-new

1  baby with his girlfriend, who, Judge, pressured him and

2  just -- it was the day of the hearing that he left.  He

3  was in my office.  We went over it.  It was not that

4  onerous a situation he was facing.  Although it was

5  certainly a severe period of incarceration, it wasn't 10

6  or 15 years.  And I would suggest to the Court -- I know

7  he's been extremely remorseful for his behavior, both

8  the criminal conduct as well as letting the Magistrate

9  down and his family down and leaving.  And I'm gratified

10  that his family is here today to continue to support

11  him.

12          So if that's the range, Your Honor, of 46 to

13  57 months, I'm asking for the low end.  I would

14  certainly leave it to the Court's best judgment.

15          **THE COURT:**  Thank you, sir.

16          **MR. MATHIEU:**  Thank you, Your Honor.  Your

17  Honor, I'm going to restrict my comments to three

18  specific various -- they are covered in the sentencing

19  memorandum that I submitted, but I just wanted to

20  respond to my brother's comments here.

21          First of all, dealing with the acceptance of

22  responsibility matter, I do note that the probation

23  department -- the probation office has recommended that

24  the defendant not receive any decrease for acceptance of

25  responsibility.  And the government would concur.

1          To give this defendant an acceptance of

2    responsibility would make a mockery of that provision.

3    Sure, he did notify the government that he was going to

4    plead guilty.  But then on the date that he was supposed

5    to plead guilty, he took off.  His excuse was that, My

6    girlfriend made me do it.  And that's just not

7    acceptable.

8          In the process, he not only caused the Court

9    and the U.S. Marshals to expend significant resources,

10   but he caused his own brother to forfeit $100,000 that

11   was tendered as bail.  There's no way that could be

12   construed as acceptance of responsibility.

13        THE COURT:  Well, no, but I don't think he

14   should be penalized further.

15        MR. MATHIEU:  Well, the acceptance of

16   responsibility element is not a penalty.  It's actually

17   a benefit to defendants who do actually show actual

18   remorse.

19        THE COURT:  True.

20        MR. MATHIEU:  Now, with respect to the safety

21   valve, Your Honor, the section that applies requires

22   that no later than the time of sentencing, the defendant

23   truthfully provide to the government all information

24   concerning the offense or offenses that he is a part of.

25   And as we set forth in our sentencing memorandum, the

was his fault.  And then they

10      cancelled each other out and they both get the benefit.

11              And there's no factual basis for this

12      defendant to get that benefit because the facts

13      corroborate what Martin Pena said and not what the

14      defendant said with respect to the defendant's

15      supervisory role, with respect to the defendant's

16      managerial role, with respect to the fact that it was

17      the defendant who paid Pena and the other co-defendant

18      who was not -- or who was not the co-defendant, the

19      other co-conspirator, Junior.

20              And the fact that it was Pena who made the

21      initial contact I think is immaterial.  The fact that a

22      worker seeks additional clients for his boss so that he

23      can get an additional commission does not make him less

24      of a worker; it might make him a better worker.  But it

25      doesn't mean that all of a sudden he's elevated to a

1    partner.  He did not join a partnership.

2            According to Pena, he was an employee.  And

3    he sold ounce amounts of cocaine, not only to Ford, but

4    also to other customers of this individual.  Pena's

5    report talks about selling ounce amounts to someone

6    named in East Boston, to another person at the Franklin

7    Hill projects in Dorchester all at the behest of this

8    defendant, who was his boss.

9            And I guess that leads me to the third, which

10   is role.  And based on his role in the offense, Your

11   Honor, the defendant should be assessed a three-point

12   upward adjustment.

13           And starting at a base offense level of 26,

14   the government would suggest that the defendant should

15   then be assessed a three-level adjustment, which would

16   take him to a Level 29.  No assessment should be

17   granted, and he certainly should not receive the benefit

18   of the safety valve.  And based on that, the defendant

19   is looking at 87 to 108 months.  And the government

20   would recommend 95 months.

21           **THE COURT:**  Thank you.

22           Mr. Franco, sir, this is all about you.  And

23   I'd like to hear what you have to say.  Although my hand

24   is not free, it certainly is important to me to know

25   what the defendant wants to say before I impose

1    sentence.  So if there's anything you'd like to say, I'd

2    like to hear it.

3          THE DEFENDANT:  (Through the interpreter.)

4    Yes.  First of all, I want to state my thanks to God and

5    to Your Honor for having given me this opportunity here

6    to speak.

7          Secondly, yes, I want to apologize for what

8    I've done.  I know, Your Honor, that I was supposed to

9    come and show up before Your Honor at a certain point.

10   And because of circumstances in my life at that time --

11   my girlfriend was pregnant, and I was under a great deal

12   of pressure -- and that was one of the reasons I did not

13   show up that day.

14         THE COURT:  I understand.

15         THE DEFENDANT:  (Through the interpreter.)  I

16   want to thank you for the opportunity you've given me

17   because I know that it's my children that are suffering

18   most in this.  I asked them not to be brought in today

19   because they have a favorable image of myself, and I

20   don't want them to see me.

21         THE COURT:  How old are they?

22         THE DEFENDANT:  (Through the interpreter.)

23   Five, eight, and one who is five months old.

24         I pray to God that I may have the chance to

25   be that person and bring them up and show them a better

```
 9        different way and give them that true love that I found
10        with them.
11                         THE COURT:  Thank you.  How old are you now?
12                         THE DEFENDANT:  (Through the interpreter)
13        32.
14                         THE COURT:  You are still pretty young   to
17        me in this case.  And I do not agree with the defendant
18        that he is entitled to the computation that his counsel
19        has filed.  And I do not agree with the government that
20        he should be sentenced at the level that they recommend
21        either.
22                         I do agree with the material, I believe, put
23        forth by the probation department.  And I will explain
24        in a moment what the result of that is.
25                         Mr. Franco, you stand before me convicted
```

1    under a plea of guilty of conspiring to distribute

2    cocaine and of distributing it.  Without going into all

3    the arithmetic of the Guidelines, I think it is proper

4    to find that the base offense level in this case is 26

5    and that there must be an adjustment for obstruction of

6    justice by virtue of the fact that you skipped, so to

7    speak, on a previous occasion.  And it wasn't just for

8    your failure to appear, but it was a deliberate absence

9    from the whole system which really borderlines an

10   attempt to escape.  And you are in criminal history

11   category I.

12           Against you is your deliberate and knowing

13   participation in a conspiracy to import heroin and

14   deliberate, although understandable, failure to appear

15   in court as required.  You did cut off your electronic

16   monitoring bracelet.  You went to New York and later

17   returned to Massachusetts.

18           In your favor, this is the first time that

19   you've committed a serious offense.  And your failure to

20   appear for sentencing, while a violation of your legal

21   responsibilities, was substantially brought about by

22   family responsibilities -- I understand that -- and has

23   resulted in monetary losses to your family because of

24   your taking care of that.

25           Bearing all of these things in mind, I find

1    that pursuant to the Sentencing Reform Act of 1984, it

2    is the judgment of the Court that the defendant,

3    Narcisco Franco, is hereby committed to the custody of

4    the Bureau of Prisons to be imprisoned for a term of 78

5    months on each count to be served concurrently.  That is

6    the lowest level of the range which I think applies

7    properly in this case.

8            Upon your release from imprisonment, the

9    defendant shall be placed on supervised release for a

10   term of four years.  Within 72 hours of release from

11   custody from the Bureau of Prisons, the defendant shall

12   report in person to the district to which he has been

13   released.

14           While on supervised release, the defendant

15   shall not commit another crime.  The defendant shall

16   refrain from any unlawful use of controlled substance.

17   The defendant shall submit to one drug test within 15

18   days of release from imprisonment and shall receive

19   periodic drug tests thereafter as directed by the

20   probation officer.

21           In addition, the defendant shall comply with

22   the same conditions that are described in the United

23   States Sentencing Guidelines at Section 5D1.3C, and

24   shall comply with the following conditions:

25           The defendant is prohibited from possessing a

1    firearm or other dangerous weapon and if ordered

2    deported, the defendant is to leave the United States

3    and not to return without prior permission of the United

4    States Attorney General.

5            It is further ordered that the defendant pay

6    the United States a special assessment of $100 to be

7    payable immediately.

8            Now, Mr. Franco, while I didn't agree

9    altogether with your attorney, I have put you at the

10   lower level of the category that applies.  You will be

11   given credit for what you've done already.  You will be

12   given days off for good behavior.

13           I want to take this occasion to express my

14   personal disagreement with the results of what the

15   Guidelines compel me to adopt on this occasion.  I

16   believe that Mr. Franco has learned his lesson; and I do

17   not agree with what the Guidelines suggest, which is the

18   result here of a sentence of more or less three years.

19   But it is not within my power to change that.

20           I'm telling the family, too, from what I've

21   read about your brother and your husband, he does not

22   seem to me to be a bad man.  But he made a very bad

23   mistake -- two bad mistakes.  For God's sake, don't do

24   it again.

25           THE DEFENDANT:   Thank you.

**MR. MATHIEU:**  Your Honor, I just want to make

10      a couple of clarifications for the record because it's

11      possible that the defendant could later file a motion

12      pursuant to 18 U.S.C. 2255.  And I just want to clarify

13      the calculations here and also just make sure that --

14      the Court had earlier mentioned that the defendant is

15      being sentenced at this time for importation of heroin.

16      And I just wanted to clarify the Court's understanding

17      that it is, in fact, distribution of heroin and

18      conspiracy to distribute it as opposed to import heroin.

19                 **THE COURT:**  He pleaded guilty to both.

20                 **MR. MATHIEU:**  Yes, Your Honor.  I just wanted

21      to clarify the precise conviction that he's been

22      sentenced on.  And then also I just wanted to confirm

23      that the sentence is based on the defendant not

24      receiving any reduction for acceptance of responsibility

25      and that the Court did also not enhance him for role and

16

1    that also there was no reduction for the safety valve.

2              THE COURT:  That's correct.

3              MR. MATHIEU:  Thank you, Your Honor.

4              MR. McCALL:  So essentially, again, just by

5    way of clarification, the Court is finding he does not

6    qualify for the safety valve?

7              THE COURT:  Yes.

8              MR. McCALL:  And I assume that's a category

9    five -- I mean, criteria five in the proffer?

10             THE COURT:  Yes.  Yes.

11             MR. McCALL:  I understand.  Thank you, Your

12   Honor.

13             THE CLERK:  All rise.  Court is now in

14   recess.)

15             (Whereupon the proceedings adjourned.)

16

17

18

19

20

21

22

23

24

25

## C E R T I F I C A T E

I, Deborah L. Crossman, Official Court Reporter for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

Deborah L. Crossman, RPR
Official Court Reporter
3507 United States Courthouse
One Courthouse Way
Boston, Massachusetts 02210
(617) 439-9190

No. 02-2660


UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____


UNITED STATES OF AMERICA,
Appellee


v.


NARCISO A. FRANCO,
Defendant-Appellant

_____


On Appeal From A Judgment In A Criminal Case
Entered In The
United States District Court
for the District of Massachusetts

_____


Opening Brief for the Appellant

_____




Respectfully submitted,

Lois M. Farmer, Esquire
GARNICK & SCUDDER, P.C.
32 Main Street
Hyannis, MA 02601
(508) 771-2320
Bar #59417




Exhibit 6

I       The sentencing judge committed plain error in adopting the PSR in lieu of making findings and rationale to support his denial of safety valve protection. . . . . . . . . 14

II.     By failing to resolve the disputed question of Franco's qualification for safety valve, the Court failed to afford Franco a complete adjudication of the sentencing issues. ... Court of Appeals should disregard the Government's conflicting interpretation of Franco's proffer and order that Franco met criteria 5. . . . . . . . . . . . . . . . . . . . . . 23

IV.     The Court's confusion as to the crimes charged and sentence imposed requires remand for clarification. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH LIMITATIONS . . . 34

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

ADDENDUM

Amended Judgment

Sentencing Hearing Transcript, December 4, 2002

i



# General Docket
## US Court of Appeals for the First Circuit


Court of Appeals Docket #: 02-2660                    Filed: 12/19/02
Nsuit:   0  (Criminal or NOT SET)
US v. Franco
Appeal from: U.S. District Court of MA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Lower court information:

      District: 0101-1 : 01-10333          lead: 01-10333
      Ordering Judge: Morris E. Lasker
      trial judge: Robert B. Collings, Magistrate Judge
      court reporter: Deborah L. Crossman, Court Reporter
      court reporter: Janet Konarski, Court Reporter
      court reporter: James E. McLaughlin, Court Reporter
      court reporter: Teri Celeste Gibson, Court Reporter
      court reporter: ECR
      court reporter: Deborah Crossman, Court Reporter
      Date Filed: 9/19/01
      Date order/judgment: 12/13/02
      Date NOA filed: 12/16/02
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Fee status: in forma pauperis

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Prior cases:
   None
Current cases:
            Lead        Member      Start       End
   Related:
            02- 2118    02- 2660    12/19/02
            02- 2119    02- 2660    12/19/02
   companion:
            02- 2660    03- 1011    1/3/03
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Panel Assignment:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


Docket as of February 23, 2005 8:31 pm                Page 1

_____

02-2660   US v. Franco

UNITED STATES                     Dina Michael Chaitowitz
      Appellee
                              **Exhibit 7**

```
                              [COR LD NTC gvt]
                              U.S. Attorney's Office
                              John Joseph Moakley Courthouse
                              1 Courthouse Way
                              Boston, MA 02210

                              Dickens Mathieu
                              617-748-3227
                              [COR gvt]
                              U.S. Attorney's Office
                              John Joseph Moakley Courthouse
                              One Courthouse Way
                              Boston, MA 02210

                              Brian J. Leske
                              FTS 617-748-3967
                              617-748-3613
                              [COR gvt]
                              U.S. Attorney's Office
                              John Joseph Moakley Courthouse
                              1 Courthouse Way
                              Suite 9200
                              Boston, MA 02210

                              Virginia M. Vander Jagt
                              FTS 617-748-3967
                              617-748-3162
                              [COR NTC gvt]
                              U.S. Attorney's Office
                              United States Courthouse
                              1 Courthouse Way
                              Boston, MA 02210


        v.

NARCISO D. FRANCO             Lois M. Farmer
     Defendant - Appellant    508-771-2320
                              [COR LD NTC cja]
                              Garnick & Scudder, P.C.
                              32 Main St.
                              Hyannis, MA 02601


Docket as of February 23, 2005 8:31 pm          Page 2
```

---

```
02-2660  US v. Franco

UNITED STATES

          Appellee

   v.

NARCISO A. FRANCO
```

Defendant - Appellant

Docket as of February 23, 2005 8:31 pm                    Page 3

_____

02-2660  US v. Franco

12/19/02          CRIMINAL CASE docketed. Opening forms sent. Notice filed by
                  Appellant Narciso D. Franco.  Appearance form due 1/2/03.
                  Docketing Statement due 1/2/03. Transcript Report/Order due
                  1/2/03. Fee due 1/2/03. [02-2660] (mlyn) [02-2660]

12/19/02          RECORD filed: Pleadings Included: 1-96. No Transcript(s)
                  filed. [711089-1] [02-2660] (mlyn) [02-2660]

12/27/02          ATTORNEY Dina Michael Chaitowitz for Appellee US added to
                  case. [02-2660] (mlyn) [02-2660]

12/27/02          APPEARANCE filed by Dina Michael Chaitowitz for Appellee
                  US. [713371-1] [02-2660] (mlyn) [02-2660]

1/13/03           DEFAULT ORDER filed. The clerk of this Court notified you,
                  as counsel who filed the Notice of Appeal that your
                  appearance form was due in the Court of Appeals. The
                  appellant is presently in default as to this filing.  It is
                  ordered that if your appearance form is not received in the
                  Clerk's Office on or before  this appeal will be dismissed
                  in accordance with Local Rule 3(b) for lack of prosecution.
                  Counsel representing defendants in criminal cases are
                  directed to Local Rules 12 and 46.6. Appearance due
                  1/27/03.  [02-2660] (mlyn) [02-2660]

1/13/03           DEFAULT ORDER filed. The appellant is presently in default
                  as to this filing. The appellant is ordered to file a
                  docketing statement by 1/27/03 for James E. McCall.
                  Failure to comply with this order will result in the
                  dismissal of the appeal for want of prosecution in
                  accordance with Local Rule 3(b). (mlyn) [02-2660]

1/13/03           TRANSCRIPT REPORT/ORDER for Appellant Narciso D. Franco in
                  02-2660 Defaulted. Your case will be dismissed if you do
                  not file your Transcript report/order by 1/23/03 . (mlyn)
                  [02-2660]

1/23/03           APPEARANCE filed by James E. McCall for Appellant Narciso
                  D. Franco in 02-2660. [720004-1] [02-2660] (mlyn)
                  [02-2660]

1/23/03           DOCKETING STATEMENT filed by Appellant Narciso D. Franco in
                  02-2660. [02-2660] (mlyn) [02-2660]

1/24/03           APPEARANCE filed by Dickens Mathieu for Appellee US in
                  02-2660. [719996-1] [02-2660] (pata) [02-2660]

2/6/03          TRANSCRIPT REPORT/ORDER for Appellant Narciso D. Franco in
                02-2660 Defaulted. Your case will be dismissed if you do
                not file your Transcript report/order by 2/18/03 . (mlyn)
                [02-2660]

Docket as of February 23, 2005 8:31 pm                    Page 4

_____

02-2660  US v. Franco

2/27/03         TRANSCRIPT REPORT/ORDER for Appellant Narciso D. Franco in
                02-2660 Defaulted. Your case will be dismissed if you do
                not file your Transcript report/order by 3/10/03 . (mlyn)
                [02-2660]

3/10/03         PUBLIC NOTE: Non compliant TOF filed by appellant.  Part II
                is not completed. "Sentencing - 12/4/02" [02-2660] (frnk)
                [02-2660]

3/31/03         DEFAULT ORDER filed. [737905-1] [02-2660] Fee due 4/15/03.
                This court has docketed appellant's appeal from the
                criminal judgment.  On December 19, 2002, this court
                directed the appellant to either pay the filing fees or to
                obtain in forma pauperis status in the district court. See
                Local Rule 3(b).  The appellant is in default as to this
                request.          Appellant's retained counsel is directed
                to Local Rule 12(b) providing that, "[A]n attorney who has
                represented a defendant in a criminal case in the district
                court will be responsible for representing the defendant on
                appeal, ... until the attorney is relieved of such duty by
                the court."          Should the appellant wish to proceed
                on appeal in forma pauperis, counsel is directed to provide
                the appellant with the proper forms for requesting in forma
                pauperis status in the district court and to aid in the
                filing of such forms.  If the request is denied in the
                district court, the appellant may file a motion in this
                court for in forma pauperis status. See Fed.R.App.P. 24(a).
                       Counsel  is directed to respond to this order, in
                writing, on or before,  April 15, 2003 as to the steps he
                has taken regarding the above matter.  Failure to take any
                action may lead to dismissal of this appeal for lack of
                prosecution pursuant to Local Rule 3(b). (dona)
                [02-2660]

4/3/03          TRANSCRIPT REPORT/ORDER filed by Appellant Narciso D.
                Franco in 02-2660. Transcript is ordered by filing of this
                form. Transcript due 5/5/03.  [02-2660] (mlyn)
                [02-2660]

4/11/03         FINANCIAL AFFIDAVIT [737905-1] filed by Appellant Narciso
                D. Franco in 02-2660 in response to 3/31/03 default order.
                [741492-1] [02-2660] (tim) [02-2660]

Docket as of February 23, 2005 8:31 pm                    Page 5

---

02-2660  US v. Franco

4/16/03          LETTER CONSTRUED AS MOTION filed by Appellant Narciso D.
                 Franco in 02-2660. Letter from Attorney McCall regarding
                 the status of the defendant-appellant's appeal. The
                 defendant in this case, Narcisso Franco, instructed me to
                 file an appeal in the above-referenced matter after his
                 plea and sentencing.  He indicated that he may later wish
                 to move to withdraw his appeal. There were also indications
                 that he would seek to retain other counsel. Pursuant to the
                 attached Order of this Court, I have forwarded the proper
                 forms for requesting In Forma Pauperis status to the
                 defendant. The defendant is currently serving his sentence
                 at Elkton F.C.I., in Elton. Certificate of Service dated
                 4/15/03 . [743633-2] [02-2660] (mlyn) [02-2660]

4/18/03          ORDER. Counsel is directed to file a status report by no
                 later then 5/7/03 summarizing the status of the appellant's
                 application to proceed In Forma Pauperis. Counsel is
                 reminded of Local Rule 12(b), which requires him to aid
                 appellant in filing the required forms in the district
                 court. Status Report due 5/7/03. [02-2660], [02-2660] (mlyn)
                 [02-2660]

5/7/03           STATUS REPORT filed by Appellant Narciso D. Franco in
                 02-2660 advising that the "Franco's Motion for Leave to
                 File In Forma Pauperis is being processed by the District
                 Court, no decison as of yet. Certificate of Service date
                 5/7/03. Status Report due 6/6/03 for Narciso D. Franco.
                 [748962-1] [02-2660] (mlyn) [02-2660]

5/13/03          DEFAULT ORDER filed. [750515-1] [02-2660] Fee due 6/6/03.
                 This order is in response to the status report filed in
                 this court on May 7, 2003. On March 31, 2003, this court
                 issued an order directing the appellant to either pay the
                 filing fees of $105.00 or to apply for in forma pauperis in
                 the district court.        This court directed counsel to
                 provide the appellant with the proper forms for requesting
                 in forma pauperis status in the district court and to aid
                 in the filing of such forms  in accordance with
                 Fed.R.App.P. 24(a).  The district court docket only
                 reflects the filing of a letter requesting in forma
                 pauperis.        Accordingly, a motion to proceed on
                 appeal in forma pauperis, financial application and prison
                 trust account information must first be filed and ruled on
                 in the district court.  The motion must be fully completed
                 and contain a statement of issues for appeal.
                 Failure to take action regarding the proper filing of the
                 request for in forma pauperis before the district court may
                 result in this appeal being dismissed for lack of
                 prosecution in accordance with Local Rule 3(b).  The
                 appellant is directed to aid in the filing of a compliant
                 motion for in forma pauperis status in the district court
                 and to file a status report in this court on or before June

6, 2003 or risk dismissal of this appeal. (dona)
[02-2660]

Docket as of February 23, 2005 8:31 pm                    Page 6

---

02-2660  US v. Franco

5/27/03          MOTION filed by Appellant Narciso D. Franco in 02-2660 on
                 behalf of Appellant Narciso D. Franco in 02-2660 to proceed
                 in forma pauperis with affidavit in support, filed.
                 Certificate of service dated 5/21/03. [02-2660] (mlyn)
                 [02-2660]

5/29/03          ORDER. Appellant has filed an Affidavit to Accompany Motion
                 for Leave to Proceed in Forma Pauperis and prison trust
                 account information in this court.  We transmit the request
                 to the district court for action.  Fed. R. App. P. 24(a).
                 Copies of the district court's ruling shall be forwarded to
                 this court.  The district court, if it denies the motion,
                 is requested to state its reasons in writing.  Fed. R. App.
                 P. 24(a)(2).  If defendant-appellant is not granted in
                 forma pauperis status by the district court, he may file a
                 motion to proceed in forma pauperis in this court, provided
                 that he do so in accordance with Fed. R. App. P. 24(b).
                 [02-2660] (mlyn) [02-2660]

6/6/03           STATUS REPORT filed by Appellant Narciso D. Franco in
                 02-2660 advising that no documentation has been recieved by
                 appellant stating that his in forma pauperis status was
                 granted to this date. Certificate of Service date 6/6/03.
                 Status Report due 7/7/03 for Narciso D. Franco. [758477-1]
                 [02-2660] (mlyn) [02-2660]

6/13/03          Court Reporter memo sent. Transcript due 6/30/03 for
                 Deborah L. Crossman.   [02-2660] (mlyn) [02-2660]

6/17/03          NOTICE RECIEVED from District Court that IFP has been
                 granted to Appellant Narciso D. Franco. [02-2660] (dona)
                 [02-2660]

6/20/03          SUPPLEMENTAL RECORD consisting of USDC Dkt#'s
                 101,102,105,106 filed. [762283-1] [762283-1]   [02-2660]
                 (mlyn) [02-2660]

7/18/03          Court Reporter memo sent. Transcript due 7/31/03 for
                 Deborah L. Crossman [02-2660] (mlyn) [02-2660]

8/1/03           MOTION filed by Appellant Narciso D. Franco in 02-2660 on
                 behalf of Appellant Narciso D. Franco in 02-2660 to proceed
                 in forma pauperis with affidavit in support, filed.
                 Certificate of service dated 7/21/03 . [02-2660] (mlyn)
                 [02-2660]

8/7/03           FORM for Selection of Counsel on Appeal filed by Appellant

Narciso D. Franco in 02-2660 requesting the court appoint new counsel to represent him. Dated 7/21/03. [02-2660] (susn) [02-2660]

8/12/03          ATTORNEY Lois M. Farmer for Appellant Narciso D. Franco in 02-2660 added to case. [02-2660] (mlyn) [02-2660]

Docket as of February 23, 2005 8:31 pm                    Page 7

---

02-2660  US v. Franco

8/12/03          Involvement of attorney James E. McCall for Narciso D. Franco terminated. [02-2660] (mlyn) [02-2660]

9/22/03          PUBLIC NOTE: Letter from Defendant-Appellant, Narciso Franco inquiring as to his appointment of counsel, also attached is a copy of his Selection Form from 7/21/03. [02-2660] (mlyn) [02-2660]

9/25/03          ORDER. Attorney Lois Farmer appointed as counsel under the guidelines of CJA. [02-2660] (mlyn) [02-2660]

9/25/03          ORDER. New counsel having been appointed today, It is hereby ordered that the time to file the CJA Form 24 is enlarged to September 2, 2003. Transcript report/order due 10/17/03. [02-2660] (mlyn) [02-2660]

10/6/03          SUPPLEMENTAL RECORD consisting of USDC dkt# 109 filed. [796166-1] [796166-1]    [02-2660] (mlyn) [02-2660]

10/6/03          Transcript(s) Dkt# 109: Sentencing, dated: 12/4/02 filed by court reporter Deborah L. Crossman in 02-2660. [02-2660] (mlyn) [02-2660]

10/23/03         AUTHORIZED CJA FORM 24 Transcripts requested: Motion Hearing, dated: 3/14/02 by Ctr. Teri Gibson; Proceedings(Rule 11 Hearing}, dated: 2/28/02 & COP, dated: 7/25/02 by Ctr. Deborah Nemetz; Bail Revocation Hearing, dated: 5/17/02 by ECR(D. Scalfani) ordered by filing of this form. Transcripts due 12/30/03.  [02-2660] (mlyn) [02-2660]

10/30/03         RECORD RETURNED FROM USDC MABO. [804755-1] [02-2660] (mlyn) [02-2660]

12/29/03         Motion filed by Court Reporter Mary Young who is transcribing an incorrect tape to extend time to file transcript until 1/12/04. [02-2660] (mlyn) [02-2660]

12/30/03         ORDER. Upon consideration of motion, It is hereby ordered that the time for Court Reporter Mary Young to file pending transcript be enlarged until January 12, 2004. Transcript due 1/2/03. [02-2660] (mlyn) [02-2660]

| | |
|---|---|
| 1/12/04 | Court Reporter Transcript Notice issued. Transcript of due 1/26/04 for Deborah Nemetz, Proceedings(Rule 11 Hearing), dated: 2/28/02 & COP, dated: 7/25/02 . (mlyn) [02-2660] |
| 1/12/04 | Court Reporter Transcript Notice issued. Transcript of due 1/26/04 for ECR, Bail Revocation Hearing, dated: 5/17/02. (mlyn) [02-2660] |

Docket as of February 23, 2005 8:31 pm                    Page 8

_____

02-2660  US v. Franco

| | |
|---|---|
| 1/12/04 | Court Reporter Transcript Notice issued. Transcript of due 1/26/04 for Teri Celeste Gibson, Motion Hearing, dated: 3/14/02. (mlyn) [02-2660] |
| 1/14/04 | SUPPLEMENTAL RECORD consisting of USDC dkt# 111 filed. [826694-1] [826694-1]  [02-2660] (mlyn) [02-2660] |
| 1/14/04 | Transcript of Bail Revocation Hearing, dated: 5/17/02 filed by MaryAnn Young(ECR), Certified Court Transcriber. [02-2660] (mlyn) [02-2660] |
| 2/4/04 | Motion filed by court reporter Deborah Nemetz in 02-2660 to extend time to file transcript of Rule 11 Hearing, dated: 2/28/02 & COP, dated: 7/25/02, until 3/4/04. Service date: 2/4/04. [02-2660] (mlyn) [02-2660] |
| 2/5/04 | ORDER. Upon consideration of motion, It is hereby ordered that the time for Court Reporter Deborah Nemetz-Crossman to file pending transcripts of Rule 11 Hearing, dated: 2/28/02 and Change of Plea, dated: 7/25/02 are hereby enlarged until. March 4, 2004. Transcript now due 3/4/04. [02-2660] (mlyn) [02-2660] |
| 2/6/04 | Court Reporter Transcript Notice issued. Transcript of Motion Hearing, dated: due 2/20/04 for Teri Celeste Gibson. (mlyn) [02-2660] |
| 2/23/04 | Certification of Filing Transcript of 03/14/02 CHANGE OF PLEA filed by court reporter Teri Celeste Gibson in 02-2660. Court Reporter certifies that transcript order is complete. (jenn) [02-2660] |
| 2/24/04 | SUPPLEMENTAL RECORD consisting of USDC dkt# 114 filed. [840822-1] [840822-1]  [02-2660] (mlyn) [02-2660] |
| 2/24/04 | Transcript of Rule 11/PreTrial Conference, dated: 3/14/02 filed by court reporter Teri Celeste Gibson in 02-2660. [02-2660] (mlyn) [02-2660] |
| 3/16/04 | Court Reporter Transcript Notice issued. Transcripts of Rule 11 Hearing, dated: 2/28/02 and Change of Plea, dated: |

                      7/25/02 due 3/30/04 for Deborah Nemetz. (mlyn)
                      [02-2660]

3/19/04        Case Re-assigned to George from Marilyn. [02-2660] (frnk)
                      [02-2660]

Docket as of February 23, 2005 8:31 pm         Page 9

---

02-2660  US v. Franco

4/5/04         Order to Show Cause entered. On March 16, 2004, Court
                      Reporter Deborah Nemetz was notified that the transcript of
                      the Rule 11 Hearing, dated 2/28/02 and Change of Plea,
                      dated 7/25/02 had not been filed in this case, and was
                      asked to take action by March 30, 2004. It does not appear
                      that the court reporter has filed the transcript in the
                      district court, or in the alternative, a motion in the
                      court of appeals for an extension of time to complete the
                      transcript. See Fed. R. App. P. 11(b)(1). Accordingly, the
                      court directs Deborah Nemetz to produce the transcript by
                      April 19, 2004, or to show cause by April 19, 2004 why he
                      has failed to produce the transcript. A certified copy of
                      this order will be forwarded to the district judge in
                      accordance with Fed. R. App. P. 11(b)(1)(D). (geor)
                      [02-2660]

4/9/04         SUPPLEMENTAL RECORD consisting of Docket Entry 117 (7/25/02
                      Rule 11/Change of Plea Hearing). [856190-1] [02-2660] (geor)
                      [02-2660]

4/9/04         Transcript of 7/25/02 Rule 11/Change of Plea Hearing filed
                      by court reporter Deborah L. Crossman. [02-2660] (geor)
                      [02-2660]

4/9/04         BRIEFING SCHEDULE. Appellant's Brief due 5/19/04.
                      Appellee's Brief due 6/18/04. Reply brief due 7/2/04.
                      [02-2660] (geor) [02-2660]

5/10/04        MOTION filed by Appellant Narciso D. Franco in 02-2660 to
                      extend time to file Appellant's brief until 6/8/04. Ext.
                      Code: OTH Certificate of service dated 5/7/04. [02-2660]
                      (geor) [02-2660]

5/10/04         ORDER entered. Upon consideration of motion of appellant, It
                      is ordered that the time for the appellant to file his brief
                      be enlarged to and including 6/8/04. [02-2660] (geor)
                      [02-2660]

5/28/04         BRIEF filed by Appellant Narciso D. Franco in 02-2660.
                      Length: 32 pages (7,059 word), Copies: 9, delivered by First
                      Class Certificate of service date 5/27/04. Appellee brief
                      due 6/28/04. Reply brief due 7/12/04. [872761-1] [02-2660]
                      (geor) [02-2660]

5/28/04        ELECTRONIC DOCUMENT: 1 disk filed by Appellant Narciso D.
               Franco containing Appellant's brief. [02-2660] (geor)
               [02-2660]

6/14/04        ATTORNEY Brian J. Leske for Appellee US in 02-2660 added to
               case. [02-2660] (geor) [02-2660]

6/14/04        APPEARANCE filed by Brian J. Leske for Appellee US in
               02-2660. [877598-1] [02-2660] (geor) [02-2660]

Docket as of February 23, 2005 8:31 pm            Page 10

_____


02-2660  US v. Franco

6/17/04        Government's MOTION For An Extension of Time Within Which
               To File Its Response filed by Appellee US until 7/19/04.
               Ext. Code: OTH. Certificate of service dated 6/17/04.
               [02-2660] (geor) [02-2660]

6/18/04        ORDER entered. Upon consideration of motion of appellee, It
               is ordered that the time for the appellee to file its brief
               be enlarged to and including 7/19/04. [02-2660] (geor)
               [02-2660]

6/25/04        LETTER filed by Dina Michael Chaitowitz, AUSA stating that
               Dickens Mathieu, Esq. is no longer with the U.S. Attorney's
               Office and to please remove him from the notice list.
               [02-2660] (geor) [02-2660]

7/16/04        Government's Motion For Additional Time To File Its
               Response until 8/2/04 filed by Appellee US. Ext. Code: OTH.
               Certificate of service dated 7/16/04. [02-2660] (geor)
               [02-2660]

7/19/04        ORDER entered. Upon consideration of motion of appellee, It
               is ordered that the time for the appellee to file its brief
               be enlarged to and including 8/2/04. (geor) [02-2660]

7/26/04        MOTION of the United States For Summary Disposition
               Pursuant To Local Rule 27(c) filed by Appellee US.
               Certificate of service dated 7/26/04. [02-2660] (geor)
               [02-2660]

7/26/04        Motion of the United States For Order Extending The Time
               Within Which It Must File Its Responsive Briefil 9/16/04
               filed by Appellee US. Ext. Code: OTH. Certificate of
               service dated 7/26/04. [02-2660] (geor) [02-2660]

7/26/04        ORDER entered. Upon consideration of motion of appellee, It
               is ordered that the time for the appellee to file its brief
               be enlarged to and including 9/16/04. [02-2660] (geor)
               [02-2660]

8/2/04         MOTION For Reconsideration of the Court's Allowance of the

Motion of the United States For Third Enlargement of Time
To File Its Responsive Brief filed by Appellant Narciso D.
Franco. Certificate of service dated 7/29/04. [02-2660]
(geor) [02-2660]

8/3/04          Opposition of the Defendant Appellant Narciso A. Franco To
Motion Of the United States For Summary Disposition and
Cross-Motion For Summary Disposition Vacating The Court's
Denial of Safety Valve Protection filed by Appellant
Narciso D. Franco. Certificate of service dated 8/2/04.
[895154-1] [02-2660] (geor) [02-2660]

Docket as of February 23, 2005 8:31 pm              Page 11

---

02-2660  US v. Franco

9/17/04         MOTION filed by Appellee US in 02-2660 to extend time to
file Appellee's brief until 11/1/04 (Motion for Summary
Disposition Pending) Ext. Code: OTH. Certificate of service
dated 9/17/04. [02-2660] (geor) [02-2660]

9/27/04         ORDER entered. Upon consideration of motion of appellee, It
is ordered that the time for the appellee to file its brief
be enlarged to and including 11/1/04. [02-2660] (geor)
[02-2660]

10/14/04        LETTER filed by US Attorney Dina Michael Chaitowitz
informing the court that AUSA Brian J. Leske is no longer
with the U.S. Attorney's Office for the District of
Massachusetts and that he is no longer handling the case.
[02-2660] (geor) [02-2660]

10/19/04        PRESENTENCE REPORT and Sentencing memoranda [UNDER SEAL]
received and filed. [920860-1] [02-2660, 03-1011] (dona)
[02-2660 03-1011]

11/1/04         ATTORNEY Virginia M. Vander Jagt for Appellee US in 02-2660
added to case. [02-2660] (geor) [02-2660]

11/1/04         APPEARANCE filed by Virginia M. Vander Jagt for Appellee US
in 02-2660. [925159-1] [02-2660] (geor) [02-2660]

11/1/04         MOTION filed by Appellee US in 02-2660 to extend time to
file Appellee's brief until 12/16/04 Ext. Code: OTH.
Certificate of service dated 11/1/04. [02-2660] (geor)
[02-2660]

11/1/04         CASE SUBMITTED . Torruella, Stahl, Howard, Circuit Judges.
[02-2660] (turn) [02-2660]

11/2/04         ORDER entered. Upon consideration of motion of appellee, It
is ordered that the time for the appellee to file its brief
be enlarged to and including 12/16/04. [02-2660] (geor)
[02-2660]

Docket as of February 23, 2005 8:31 pm                    Page 12

_____

02-2660  US v. Franco

11/24/04        JUDGMENT entered by Judge Juan R. Torruella, Senior Judge
                Norman H. Stahl, and Judge Jeffrey R. Howard. Appellant
                Franco seeks review of the district court's denial of a
                safety valve reduction to his sentence. After carefully
                considering the record below, Appellant's Brief, Respondent
                Government's Motion for Summary Disposition, and
                Appellant's Cross-Motion for Summary Disposition in light
                of controlling case law, we find that Respondent's motion
                should be granted and the judgment summarily affirmed. The
                evidence in the record below, combined with the court's
                express statements in response to both counsels' requests
                for safety valve "clarifications" during sentencing,
                support the conclusion that the district court properly
                found Franco did not meet safety valve criterion five. We
                find no logical inconsistency in determining that, while a
                defendant does not merit the technical designation of a
                leader/organizer under the definition of safety valve
                criterion four, he has nonetheless failed to be completely
                candid in his criterion five proffer by underplaying, or
                minimizing, his actions within the role in which he did
                engage. Further, the district court's misstatements during
                its colloquy do not suggest plain error in the sentencing.
                Accordingly, we find- no clear or plain error in the
                sentence the district court imposed and no substantial
                question for appeal. Respondent's motion is granted and
                Appellant's cross-motion is denied. The judgment of the
                district court is Affirmed and any other outstanding
                motions are dismissed as moot. Loc. 27(c). [933687-1]
                [02-2660] (geor) [02-2660]

12/15/04        MANDATE ISSUED. [02-2660] (geor) [02-2660]

12/17/04        RECORD consisting of documnts 1-96, 101, 102, 105, 106,
                109, 111, 114, 117 including transcripts and sealed PSR
                returned to originating court. (mich) [02-2660]

2/2/05          ATTORNEY MOTION filed by Lois M. Farmer to withdraw as
                counsel for Appellant Narciso D. Franco. Certificate of
                service dated 2/1/05. [02-2660] (geor) [02-2660]

Docket as of February 23, 2005 8:31 pm                    Page 13

_____

02-2660  US v. Franco

2/4/05        ORDER entered. Counsel for defendant-appellant, who was
              appointed pursuant to the Criminal Justice Act, 18 U.S.C.
              3006A, has submitted a motion for leave to withdraw.
              Although counsel states that she has provided the court's
              judgment to her client and discussed with him the time
              required for filing a petition for writ of certiorari, she
              fails to state whether, upon review of this court's
              decision on appeal, she has concluded that there are no
              reasonable grounds for filing a petition for a writ of
              certiorari in this case, and whether she has advised
              defendant-appellant of her conclusion in that regard. See
              Local Rule 46.5(c). If counsel has concluded that filing a
              petition for a writ of certiorari in this case would be
              frivolous, counsel must advise defendant-appellant of this
              conclusion and certify to the court that she has done so by
              February 9, 2005. See Local Rule 46.5(c). Counsel also must
              inform the court whether defendant elects to apply for
              certiorari. See Local Rule 46.5(c). If defendant does not
              respond to counsel's notification, counsel must so inform
              the court by letter. Accordingly, by February 14, 2005,
              counsel is directed to renew her motion to withdraw in
              compliance with Loc. R. 46.5(c) and to inform this court in
              writing as to defendant-appellant s response or failure to
              respond to her notification. [02-2660] (geor)
              [02-2660]

2/9/05        Renewed MOTION To Withdraw filed by Atty. Lois M. Farmer.
              Certificate of service dated: none. [02-2660] (geor)
              [02-2660]

2/10/05       ORDER entered. Counsel for defendant-appellant, who was
              appointed pursuant to the Criminal Justice Act, 18 U.S.C. §
              3006A, has renewed her motion for withdrawal pursuant to
              Local Rule 46.5(c). Counsel's renewed motion states that
              the defendant-appellant has notified counsel that he does
              not wish to apply for certiorari. Accordingly, we grant
              counsel's motion to withdraw. See Local Rule 46.5(c).
              [02-2660] (geor) [02-2660]

Docket as of February 23, 2005 8:31 pm          Page 14

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 08/23/2005 07:45:50 | | |
| PACER Login: | us2141 | Client Code: | doj |
| Description: | dkt report | Case Number: | 02-2660 |
| Billable Pages: | 14 | Cost: | 1.12 |

1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MASSACHUSETTS
2
        - - - - - - - - - - - - - - - - - -
3
        UNITED STATES OF AMERICA,
4

5            vs.                          No. 1:01cr10333-1

6       JAVIER SANTIAGO FIOL,
                                          Boston, Massachusetts
7       - - - - - - - - - - - - - - - - - -   July 10, 2002

8
                    BEFORE THE HONORABLE MORRIS E. LASKER
9                   UNITED STATES DISTRICT COURT JUDGE

10      APPEARANCES:

11

12      For the Government:          Dickens Mathieu, Esq.
                                     United States Attorney's Office
13                                   1 Courthouse Way
                                     Boston, MA 02210
14

15      For the Defendant:           William Keefe, Esq.
                                     555 Amory Street
16                                   Jamaica Plain, MA 02130
                                     (617)522-9500
17

18

19      Official Court Reporter:     Janet M. Konarski, RMR, CRR
                                     John J. Moakley U.S. Courthouse
20                                   1 Courthouse Way, Suite 3200
                                     Boston, MA 02210
21                                   (617)748-3100

22

23

24                              Exhibit 8

25

2

1   (The following hearing was held in open court before the

2   Honorable Morris E. Lasker, United States District Judge,

3   United States District Court, District of Massachusetts, at

4   the United States Courthouse, 1 Courthouse Way, Boston,

5   Massachusetts, on July 10, 2002, commencing at 10:45 a.m.)

6               **THE CLERK:**  Court is now in session.

7               **THE COURT:**  Good morning, everybody.

8               **THE CLERK:**  This is criminal 1:01-10333, United

9   States of America versus Javier Santiago Fiol.  Would the

10  attorneys please identify themselves and state whom they

11  represent.

12          **MR. MATHIEU:**  Good morning, your Honor, Dickens

13  Mathieu on behalf of the United States.

14          **MR. KEEFE:**  William Keefe for the defendant.  Good

15  morning, your Honor.

16          **THE COURT:**  Good morning.  This case is a very

17  difficult case.  We're here for sentencing, and as counsel

18  and the defendant know, probably the family I see in the

19  audience, Mr. Santiago Fiol suffers from a rare disease,

20  which creates problems that I never had to deal with in 34

21  years on the bench.

22          I've given a great deal of thought to how to

23  handle this case, and I have decided that this case does

24  warrant a departure downward, as has been requested by a

25  motion made by the defendant, and answered by the government.

3

1    I will read my reasons for coming to that

2    conclusion, and having come to that conclusion, the question

3    is what remedy there should be.  I have explored with the

4    probation department what alternatives there are to

5    incarceration, and I am not certain as to what the authority

6    of the Court is with regard to imposing home detention at

7    great length.

8    I have been informed and believe it to be correct

9    that being put in a halfway house is not possible, because

10    the defendant is not a United States citizen.  He's not,

11    therefore, eligible for it.

12    So, we may have to defer the precise sentence for

13    another day, but I want to read my conclusions on this

14    question today.

15    Mr. Santiago Fiol is here on his own plea of

16    guilty to Counts 1 and 2 of the indictment, which charged him

17    with conspiracies to possess and possession of cocaine with

18    intent to distribute in violation of 21 U.S.C. 846 and 21

19    U.S.C. 841(a)(1), as well as 18 USC Section 2.  He is being

20    held accountable for at least 500 grams of cocaine, pursuant

21    to U.S. sentencing guidelines, Section 2D1.1(c)(7), for which

22    the base offense level is 26.

23    He's entitled to an adjustment for sentence of

24    responsibility for three points, which would bring the

25    offense level down to 23, and the guideline range if I find

4

1    that U.S. Sentencing Guidelines 5C1.2 apply would be from 37

2    to 46 months.

3        I understand from the government that they do not

4    dispute that Section 5C1.2 applies.  Am I correct about that?

5        **MR. MATHIEU:**  That is correct, your Honor.  Yes,

6    your Honor.

7        **THE COURT:**  All right.  If Mr. Santiago Fiol did not

8    suffer from the physical condition that he suffers from, I

9    would have imposed a sentence of 37 months with a condition

10    that he not be required to surrender until the government was

11    capable of taking him at Fort Devins, but for the following

12    reasons I have come to a different conclusion:

13        In this case, as reported by the defendant's

14    treating physician, Patricia Donahoe, M.D., at Mass. General

15    Hospital for children, the defendant suffers from severe

16    esophageal varices, a condition in which large veins form

17    around the distal end of the esophagus or the proximal upper

18    portion of the stomach, they form just beneath the mucosa and

19    can be caused to bleed by excessive gastric hyperacidity.

20        This hyperacidity can be brought on by intense

21    emotional distress.  The bleeding that occurs with the

22    esophageal varices is often rapid and massive, unlike the

23    bleeding that occurs with the average gastric duodenal ulcer.

24        Because of this condition, Dr. Donahoe states

25    that she sincerely fears for the health of the defendant in

5

1   an incarceration environment.

2        The defendant has been treated for this condition

3   regularly at MGH since he was four years of age, but remains

4   at risk to bleed at any time.  According to Dr. Donahoe,

5   stress often triggers that bleeding.

6        On the basis of this condition, the defendant

7   moves for a downward departure under 16 U.S.C.,

8   Section 2553(b), which authorizes the sentencing court to

9   impose a sentence outside of the guideline range, if the

10  Court "finds that there exists mitigating circumstances of a

11  kind or to a degree not adequately taken into consideration

12  by the sentencing commission in formulating the guidelines".

13  Among the factors which may be considered a departure from

14  the guidelines the health of the defendants is qualified as a

15  discouraged factor.

16       Under the Supreme Court's ruling in Koon V.

17  United States if a factor is a discouraged factor the Court

18  should depart only if the factor is present to an exceptional

19  degree.

20       Nevertheless, the policy statement of the

21  guidelines dealing with the subject state that the relevant

22  part, in relevant part that an extraordinary -- that "an

23  extraordinary physical impairment may be a reason to impose

24  sentence beblow the applicable guidelines range; for example,

25  in the case of a seriously infirmed defendant, home detention

6

1    may be as efficient as, and less costly than, imprisonment".

2        The defendant argues that his case falls in the

3    category of an "extraordinary physical impairment" which

4    merits a departure.

5        In opposition, the government cites U.S. v.

6    Persico, 164 F.3d, 796 at 806, a second circuit case, decided

7    in 1999, to the effect that "extraordinary physical

8    impairment required by the guideline for a downward departure

9    requires medical conditions that the Bureau of Prisons is

10   unable to accommodate".

11       Pursuant to Persico, the government has submitted

12   a letter from Barbara Cadogan, C-A-D-O-G-A-N, Health Services

13   Administrator of the Northeast Regional Office of the Bureau

14   of Prisons, which concludes that based on the information

15   provided to her, and her knowledge of the bureau's medical

16   resources, the bureau will be able to provide appropriate

17   care for Mr. Santiago Fiol.

18       While the submission of such information is

19   appropriate and useful, it does not solve the dilemma created

20   by Mr. Santiago Fiol's special situation, because his

21   personal physician, Dr. Donahoe, has knowledge of the case

22   and has treated him for many years, and she expresses

23   understandable fears that the stress of the incarceration may

24   provoke catastrophic bleeding.

25       The issue is whether a departure is justified in

7

1   such circumstances to protect him from that risk, even if the

2   Bureau of Prisons might be able to treat it, if it occurred.

3          I conclude that in the truly extraordinary

4   circumstances of this case, a departure downward is

5   appropriate.

6          Accordingly, I intend to impose a deferred

7   sentencing until we can be sure of the right way to do it, a

8   sentence of the maximum time allowable in home detention and

9   the sentence of public service, as well.

10          I am asking counsel to confer with me in the

11   robing room with the probation officer, so we can set a time

12   for the actual sentence, itself.

13          **MR. MATHIEU:**  Your Honor, if I may be heard?

14          **THE COURT:**  Yes.

15          **MR. MATHIEU:**  I just wanted to state my objections

16   on the record, and I think the Court has actually

17   incorporated in its conclusions the government's express

18   objections based on the letter by Barbara J. Cadogan.

19          **THE COURT:**  Right.

20          **MR. MATHIEU:**  But, in addition, the government would

21   also argue that the defendant's condition, although it

22   appears to be a rare disease, under the case law, and the

23   government would also cite United States versus Martinez

24   Guerero, which was not in our sentencing memorandum, but

25   which we discovered recently after doing additional research,

8

1    which supports the government's position, the citation for

2    that case is 987 F.2d 618, but, in short, the government's

3    position is that the defendant's condition does not meet the

4    standards for a departure under 5H1.4.

5        **THE COURT:** I understand you, Mr. Mathieu, and I

6    want to commend the government for the careful way in which

7    it has put the matter before me, and I don't think it's an

8    easy decision either way. I think we need some guidance of

9    the Court of Appeals.

10       If I were to go with the government, it would,

11   however, mean that Mr. Santiago Fiol would immediately be

12   incarcerated pending appeal, and I think it's better that we

13   do it, that the government can appeal and that the physical

14   risks involved will not be imposed, unless the Court of

15   Appeals thinks that they should be.

16       **MR. MATHIEU:** I would note, your Honor, that under

17   18 U.S.C. 314(3)(a), that if the Court were to impose a

18   sentence that the defendant would nonetheless -- that the

19   Court nonetheless could release the defendant if it made a

20   specific finding that the defendant did not pose a danger to

21   the community or pose a serious risk of flight.

22       **THE COURT:** That's true. That could be done. That

23   could be done. Okay. I don't know whether the ladies and

24   gentlemen in the audience who came, must be family members,

25   have understood all this or not. I'll leave it up to counsel

9

1   to explain it to them later on, if necessary.

2          May I see counsel and the probation officer in

3   the robing room with the reporter, please.

4          **THE CLERK:**  All rise.

5                    CONFERENCE IN CHAMBERS

6          **THE COURT:**  This is the first ever for me, and I've

7   been around quite a while, and, you know, the issue has to be

8   decided by the Court of Appeals, and then it will be.  The

9   question is how we can bring this to a conclusion.

10         Unfortunately, I'm going on vacation at the end

11  of the week, but I will be back on the 24th and 25th, and we

12  could set it for the 25th, I think.

13         **LAW CLERK:**  We have staff in the morning.  We could

14  do it very early in the morning or 9:30 or at 2:00 in the

15  afternoon.

16         **THE COURT:**  9:30 all right with you?

17         **MR. MATHIEU:**  I will not be present.  I suppose it's

18  just somebody standing there to represent the government

19  during the sentencing, so I can get someone to cover, but I

20  personally will be away that week.

21         **THE COURT:**  That's all right.  I mean I would like

22  to have you here, but if you can't, that's okay.

23         Ms. Cyr, the sole purpose of the adjournment is

24  to make sure what the authority of the Court is on home

25  detention.  I mean how much can be imposed and so on, and

1    today is Wednesday.  I will be here the rest of the week, so

2    if you can give me your information on that, as soon as

3    possible, I'd appreciate it.

4             **MS. CYR:**  Yes, your Honor.

5             **THE COURT:**  Do you have anything?

6             **MR. KEEFE:**  I don't, your Honor.

7             **THE COURT:**  I suppose you're surprised to have

8    prevailed.  It's a toughie.  This is a toughie for everybody.

9             **MR. KEEFE:**  Again --

10            **THE COURT:**  My guess is the Court of Appeals will

11   probably reverse me, but that is all right.

12            **MR. KEEFE:**  I can tell your Honor that he saw a new

13   doctor on Monday, July 1st, and the results of the endoscopy,

14   which he had in April are back, and I just got from vacation

15   on Monday night.

16            I don't have copies of those, but I understand

17   there has been some problems that have developed with his

18   esophagus, probably as a result of some of the stress

19   resulting from this proceeding.

20            **THE COURT:**  This must be stress for him.

21            **MR. KEEFE:**  I'll provide the Court with these

22   documents over the next week or two.

23            **THE COURT:**  Don't make it any more complicated than

24   it already is.

25            **MR. MATHIEU:**  The sentencing date is what?

11

1    **MR. KEEFE:**  July 25th.

2    **THE CLERK:**  July 25th at 9:30.

3    **THE COURT:**  July 25 at 9:30 a.m.  Thank you.

4    **MR. KEEFE:**  Thank you, your Honor.

5        (Conference concluded at 11:10 a.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

12

1                    C E R T I F I C A T E

2    COMMONWEALTH OF MASSACHUSETTS

3    SUFFOLK, SS.

4           I, Janet M. McHugh, a Registered Merit Reporter and

5    a Notary Public within and for the Commonwealth of

6    Massachusetts do hereby certify:

7           THAT the transcript of the proceedings contained

8    herein is a true and accurate record of my stenotype notes,

9    to the best of my knowledge, skill and ability.

10          IN WITNESS WHEREOF, I have hereunto set my hand this

11   12th day of July, 2002.

12

13                              JANET M. MCHUGH

14                              Notary Public

15

16   My Commission Expires:

17   July 19, 2007

18

19

20

21

22

23

24

25

1

1    UNITED STATES DISTRICT COURT
     DISTRICT OF MASSACHUSETTS
2

3    * * * * * * * * * * * * * * *
     UNITED STATES OF AMERICA        *
4                                    *
                vs.                  *    Criminal Action
5                                    *    No. 01-CR-10333
     JAVIER SANTIAGOFIOL aka         *
6    Martin Pena                     *
     * * * * * * * * * * * * * * *
7

8           BEFORE THE HONORABLE MORRIS E. LASKER
            SENIOR JUDGE, U.S. DISTRICT COURT
9                      **SENTENCING**
                    July 25, 2002
10

11   APPEARANCES:

12

13        UNITED STATES ATTORNEY'S OFFICE (by Dickens
     Mathieu, Esq.) Suite 9200, One Courthouse Way,
     Boston, Massachusetts 02210, on behalf of the
14   Government

15        WILLIAM H. KEEFE, ESQ., One McKinley Square,
     Boston, Massachusetts 02109, on behalf of the
16   Defendant

17

18                              Courtroom No. 8
19                              U.S. District Court
                                One Courthouse Way
20                              Boston, Massachusetts 02210

21

22

23

24                    Deborah L. Nemetz, RPR
                      Official Court Reporter
                         **Exhibit 9**
25

1          P R O C E E D I N G S

2          THE COURT:  Good morning, everybody.

3          THE CLERK:  This is Criminal 01-10333, Javier

4     Santiagofiol.  Would the attorneys please identify

5     themselves and who they represent for the Court.

6          MR. MATHIEU:  Good morning, Your Honor.

7     Dickens Mathieu for the United States of America.

8          MR. KEEFE:  William Keefe for the defendant.

9     Good morning, Your Honor.

10         THE COURT:  Good morning, everybody.  As

11    counsel know and as I assume that Mr. Santiagofiol has

12    been informed, I have spent a good deal of time since

13    our last meeting trying to see whether there is an

14    arrangement by which I could depart and place the

15    defendant in home detention or in a halfway house to

16    perform public service.  But I find that there are

17    various legal and practical obstacles that make that an

18    impossibility.

19         Accordingly, I do intend to pursue my view that

20    this case warrants a departure for the reasons that I

21    expressed in great length the last time we were

22    together.  And I am prepared to impose sentence at this

23    time.

24         Is there anything further that Mr. Keefe wishes

25    to say or that the defendant wishes to say?

1          **MR. KEEFE:**  No, Your Honor, other than

2     respectfully I'd ask the Court to -- and I understand

3     that this is a generous departure that the Court has

4     undertaken with respect to not only its analysis and

5     attempt to fashion some type of home detention as a

6     sentence, but respectfully I ask that the Court consider

7     perhaps a six-month term of incarceration with

8     self-reporting and his continued arrangements on the

9     bracelet until that time.

10         **THE COURT:**  All right.  Does the government

11    wish to be heard?

12         **MR. MATHIEU:**  Yes.  Thank you, Your Honor.

13    Your Honor, the government -- since there has been a

14    motion for the Court to reconsider its decision, the

15    government would also ask the Court to reconsider in two

16    respects:  One, to not depart; and, two, with respect --

17    if the Court still decides to depart, the government

18    would ask for a greater length of detention.

19         And here are the reasons, Your Honor:  As

20    you know, the defendant was born with an unfortunate

21    disease.  And he was permitted to come to this country

22    to receive treatment.  And, as I understand it, the

23    defendant for many years has received treatment at the

24    expense of the taxpayers of the United States.  The

25    government -- the defendant repays this largess by

1    coming here and selling drugs, notwithstanding the fact

2    that he was supposedly sick.  And at the time that the

3    defendant sold the drugs, it appears that he had been

4    asymptomatic for approximately 10 years.

5         The defendant was in custody for

6    approximately three months prior to being released on

7    conditions.  And during that period of time, the

8    defendant did not exhibit any symptoms of his illness.

9    Now the defendant has sought and the Court apparently is

10   inclined to give him a departure, notwithstanding the

11   fact that the Bureau of Prisons says that they can treat

12   his medical condition.

13        Thus, Your Honor, for those reasons the

14   government would urge the Court to reconsider this

15   decision to depart and not to depart and to sentence the

16   defendant to at least 37 months.

17        Should the Court decline our motion to

18   reconsider, then the government would urge the Court to

19   sentence the defendant to something greater than a year

20   and one day as the Court indicated its prepared to do.

21        **THE COURT:**  Well, thank you, Counsel --

22        **MR. KEEFE:**  Your Honor, my client has asked

23   me if he could speak to the Court.

24        **THE COURT:**  Of course.

25        **MR. KEEFE:**  I don't know if he's ever

5

1    exercised his right of allocution.

2         THE COURT:   I'm very glad to -- it's quite

3    proper for him to speak to me and tell me whatever he

4    would like to say.

5         THE DEFENDANT:   (Through the interpreter)

6    Good morning, Your Honor.  I simply want to thank you

7    for your consideration that you've had for me.  I have

8    tried to make up for the wrong that I've done.  And I

9    feel proud and I can hold up my head because I know that

10   I have changed.  I have a future ahead of me.  I want to

11   live.  And I'm proud of my family that has provided

12   enormous support in spite of the wrong I've done.  And I

13   accept and agree with any sentence that you impose

14   because I know that I did wrong.  That's all I wanted to

15   say.  Thank you very much.

16        THE COURT:   Thank you very much for that

17   statement.  I appreciate and want to believe that you

18   have changed as you say you have.  And I appreciate the

19   fact that you understand that I've given a great deal of

20   thought to this case.  I think both counsel understand

21   that, too.  And they also have given great thought to

22   this case.  And the government's position is not

23   necessarily unreasonable in the circumstances, but I'm

24   prepared to proceed with what I think is right for all

25   the reasons that I've given now a number of times in

1  this case.

2          Accordingly, pursuant to the -- would you

3  please stand.  I want to impose the sentence now.

4          Pursuant to the Sentencing Reform Act of

5  1984, it is the judgment of the Court that the

6  defendant, Javier Santiagofiol, is hereby committed to

7  the custody of the Bureau of Prisons to be imprisoned

8  for a term of one year and one day with judicial

9  recommendations that the defendant be:  One, designated

10  to report to FCI Devens to enable him to continue to

11  receive treatment as needed at Massachusetts General

12  Hospital, if deemed possible by the Bureau of Prisons;

13  and, two, designated to another institution with a

14  medical facility with designation to FCI Devens as soon

15  as possible.  This term consists of terms of a year and

16  a day on each count to be served concurrently.

17          Upon release from imprisonment, the

18  defendant shall be placed on supervised release for a

19  term of four years.  This term consists of a term of

20  four years on each count, also the terms to run

21  concurrent.

22          Within 72 hours of release from the custody

23  of the Bureau of Prisons, the defendant shall report in

24  person to the district to which the defendant is

25  released.  While on supervised release, the defendant

1      shall not commit another federal offense or a state or

2      local crime.  The defendant shall refrain from any

3      unlawful use of a controlled substance.  The defendant

4      shall submit to one drug test within 15 days of release

5      from imprisonment and at least two periodic drug tests

6      thereafter as directed by the probation officer.

7                In addition, the defendant shall comply

8      with the standard conditions that are described in the

9      United States Sentencing Guidelines Section 5D1.3C and

10     shall comply with the following special conditions:

11               The defendant shall use his true name.

12               Which is your true name, sir?

13               **THE DEFENDANT:**  Martin Pena.

14               **THE DEFENDANT:**   (Through the interpreter)

15     Martin Pena.

16               **THE COURT:**  All right.  The defendant, Mr.

17     Pena, will use his true name at all times and is

18     prohibited from the use of any aliases, false dates of

19     birth, Social Security numbers, places of birth, and any

20     other pertinent demographic information.  The defendant

21     is prohibited from possession of a firearm or other

22     dangerous weapon.  If ordered deported, the defendant is

23     to leave the United States and not return without prior

24     permission of the United States Attorney General.  It is

25     further ordered that the defendant shall pay the United

8

1    States a special assessment of $200, which shall be due

2    immediately.

3         Now, one further thing:  Because of the

4    defendant's medical condition, which is central to all

5    of these proceedings, I am ruling that he not be

6    required to surrender until I have been assured that FCI

7    Devens is ready to take him at that time.  And I'd ask

8    the United States Attorney if he could see what he can

9    do to make the arrangements and keep us informed, the

10   sooner the better.

11        **MR. MATHIEU:**  Your Honor, would the Court

12   amend that to require that the defendant be eligible for

13   Devens or another medical facility?

14        **THE COURT:**  No, I won't because I hope that

15   they will take him to Devens and he can continue to have

16   treatment by the people who have been treating him all

17   along.  I have said that once he's in the system, it's

18   up to the system.

19        **MR. MATHIEU:**  Very well.

20        **THE COURT:**  All right.  Thank you all.

21        **THE CLERK:**  All rise.  Court is now in

22   recess.

23        (Whereupon the proceedings adjourned.)

24

25

# C E R T I F I C A T E

I, Deborah L. Nemetz, Official Court Reporter for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

Deborah L. Nemetz, CSR, RPR
Official Court Reporter
3507 United States Courthouse
One Courthouse Way
Boston, Massachusetts 02210
(617)439-9190