```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS


                              )
NARCISCO A. FRANCO,           )
     Petitioner,              )
                              )
          v.                  )     05-CV-10862-MEL
                              )
UNITED STATES,                )
     Respondent.              )
                              )
```

## MEMORANDUM AND ORDER

LASKER, D. J.

     Petitioner Narcisco A. Franco ("Franco") moves, *pro se*, for the Court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. After careful consideration, and following a hearing at which Franco presented his arguments directly to the Court, I find that the motion must be DENIED.

### I. Relevant Facts

     On July 25, 2002, Franco pleaded guilty to conspiracy to possess with the intent to distribute cocaine in violation of 21 U.S.C. § 846, and distribution of cocaine in violation of 21 U.S.C. § 841(a). Franco stipulated that the drug amount in question was between 500 and 2000 grams of cocaine, and agreed that he was to be assessed a two level obstruction of justice enhancement for his failure to appear at his original Rule 11 hearing. Franco reserved his right to request a three level reduction for acceptance of responsibility. The plea agreement

did not make any mention or recommendation as to the safety valve provision.

On December 4, 2002, I sentenced Franco to 78 months on each of the two counts, to be served concurrently, followed by four years of supervised release. This sentence, handed down under the pre-Booker sentencing framework, was based on a calculated total offense level of 28 (base offense level 26 plus a two level enhancement for obstruction of justice), for which the guidelines mandated, at a category one criminal history, 78 to 97 months. I did not grant a downward departure for acceptance of responsibility, nor did I apply a two level downward departure under the safety valve provision.

## II. Analysis

### A. Ineffective Assistance of Counsel

Franco argues that, pursuant to Strickland v. Washington, 466 U.S. 668 (1984), his counsel was ineffective for: (1) failure to request an evidentiary hearing on the safety value issue, and (2) failure to argue for a downward departure based on Franco's extraordinary family circumstances._ As detailed below, Franco has shown neither that his attorney's representation fell below an objective standard of reasonableness, nor that he was prejudiced by any errors of counsel. Id. at 687-88, 693.

With respect to the safety valve issue, attorney James McCall addressed the truthfulness of Franco's proffer – the fifth

and disputed component of U.S.S.G. §5C1.2 – in his sentencing memorandum and orally at the sentencing hearing.  On both occasions, McCall vigorously argued that Franco's proffer was truthful and that Franco was therefore eligible for the safety valve protection.  Given the record evidence, there was no need for a hearing on the issue.  At sentencing, I relied on the representations of the government as to the truthfulness of Franco's proffer, as well as the factual differences in the proffers of Franco and his co-defendant.  There is no reasonable probability that I would have found Franco safety valve eligible following an evidentiary hearing.  McCall did not act unreasonably and Franco was not improperly prejudiced by the lack of an evidentiary hearing.

With respect to the downward departure issue, the law in this Circuit is that for family circumstances to merit a departure the family situation must be atypical and exceptional. United States v. Roselli, 366 F.3d 58, 69 (1st Cir. 2004); United States v. Louis, 300 F.3d 78, 81-82 (1st Cir. 2002).  The Court of Appeals has affirmed departures based on family obligations only on rare occasions, when a defendant was so irreplaceable that incarceration would cause extraordinary hardship to his family.  Roselli, 366 F.3d at 68; United States v. Pereira, 272 F.3d 76, 82 (1st Cir. 2001); United States v. Sclamo, 997 F.2d 970, 974 (1st Cir. 1993)(affirming departure where defendant's

stepson made dramatic progress from a psychiatric disorder due largely to defendant's care and support); <u>United States v. Rivera</u>, 994 F.2d 942, 952-54 (1st Cir. 1993)(allowing departure where defendant was a single mother of three, received only income from welfare, and had virtually no contact with or support from family members). Indeed, the Court of Appeals has disallowed departures in cases where the family hardship was arguably more extraordinary, or the defendant more irreplaceable to his family, than in Franco's case. <u>See</u> <u>United States v. Claudio</u>, 44 F.3d 10, 16 (1st Cir. 1995)(affirming denial of downward departure based on defendant's asserted need to care for twelve year old son suffering from neurological condition and learning disorder); <u>United States v. Romero</u>, 32 F.3d 641, 652-53 (1st Cir. 1994)(denying downward departure where defendant's wife was murdered, his children were living with a sister who could not afford to support them, and his son had rare blood disease); <u>United States v. Chestna</u>, 962 F.2d 103, 107 (1st Cir. 1992)(finding that defendant who was a single mother of four young children did not show exceptional family hardship meriting departure); <u>United States v. Rushby</u>, 936 F.2d 41, 42-43 (1st Cir. 1991)(finding defendant's status as the main breadwinner for his wife and two children, and as an aid to his wife's grandmother, insufficient to invoke family exception).

      Franco submits that he is the exclusive provider for

his infant son and elderly parents.  However, Franco's young son is in the care of his mother, and Franco's parents are in the care of Franco's siblings.  Given the state of the law, Franco's family obligations are simply not so atypical as to justify a departure.  Therefore, McCall was not ineffective in failing to request a departure based on family circumstances, nor was Franco prejudiced by McCall's decision not to request such a departure.

B. Sua Sponte *Evidentiary Hearing on Safety Valve Issues*

Franco contends that the Court improperly failed to convene *sua sponte* an evidentiary hearing on the safety valve issue.  However, this Court no longer has the authority to consider this issue because it was already acted on by the Court of Appeals.  United States v. Dirring, 370 F.3d 862, 864 (1st Cir. 1967); see also United States v. Argencourt, 78 F.3d 14, 16 n.1 (1st Cir. 1996).  In his direct appeal, Franco asserted that this Court committed clear error in relying on the pre-sentence report and failing to make independent factual findings on the sufficiency of his proffer by conducting an evidentiary hearing.  The Court of Appeals addressed this question in its ruling, finding "no clear or plain error" in the sentence imposed by this Court.  United States v. Narciso A. Franco, No. 02-2660, slip op. at 2 (1st Cir. Nov. 24, 2004).

C. *Disparity in Sentences*

Finally, Franco argues that the wide disparity between

the sentences given to him and his co-defendant, Javier Santiago-Fiel a/k/a Matina Pena ("Pena"), raises a presumption of vindictiveness by the United States Attorney.  Despite their comparable culpability and their identical criminal history, Franco's sentence was sixty-six months longer than Pena's.  Franco asserts that this outcome was the result of a personal vendetta by the prosecutor based on Franco's failure to appear at a Rule 11 hearing.

This argument fails because it lacks factual support.  Franco does not point to any statement or action by the prosecutor that demonstrates vindictiveness against Franco.  Moreover, the record indicates that the sentencing disparity resulted from the normal application of the sentencing guidelines by this Court.  Based on their similar roles in the offense and identical criminal histories, both defendants began at the same base offense level.  However, Franco received a two level obstruction of justice increase because he defaulted at his Rule 11 hearing; Pena did not.  Pena received a two level safety valve reduction; Franco did not.  Pena received a three level acceptance of responsibility reduction; Franco did not.  As a result, while Franco's total offense level was 28, Pena's was 21.  Thus, while Franco's guidelines sentencing range was 78 to 96 months, Pena's was 37 to 46 months.  Moreover, after finding that Pena suffered from severe esophageal varices that could lead to

excessive internal bleeding if he were incarcerated, I granted a downward departure. In sum, the lesser sentence received by Pena was due to the normal application of the sentencing guidelines and my own decision - which the government opposed - to depart downward because of Pena's exceptional medical condition. The sentencing disparity cannot be attributed to any vendetta on the part of the prosecutor.

            \*            \*            \*

Accordingly, Franco's motion to vacate, set aside, or correct his sentence is DENIED.

It is so ordered.

Dated:   March 9, 2006
         Boston, Massachusetts        /s/ Morris E. Lasker
                                            U.S.D.J.